State ex rel. Vaughan vs. Richmond, Sheriff.

## No. 708.

### Succession of C. L. B. Boffenschen.

An opponent of an administrator's account can contest no item of the account which he has not in specific, or in general terms, opposed.

The law of this State prohibiting an individual from doing business under a *firm* name, does not affect a person residing in another State.

To maintain his privilege on property sold by him, as to third persons, the vendor must *record* the sale.

The proceeds of a policy of life assurance taken out by the husband in favor of his wife, does not become a part of the community, but belongs exclusively to her and her heirs.

APPEAL from the Parish Court of Ouachita parish. *Slack*, J.

*Cobb & Gunby, Franklin Garrett,* and *Robert J. Caldwell,* for opponents.

*R. W. & R. Richardson,* for administratrix.

The opinion of the court was delivered by

Manning, C. J. Charles Boffenschen died intestate in March 1876 leaving a widow and six minor children. His widow was appointed administratrix of his succession, and after inventory had been made, she

obtained an order of sale to pay debts. Part of the movables were sold for cash in June of same year. The other movables and a lot with brick building (offered at first sale and appraisement not having been bid) were sold on twelve months credit in July. In the next month the other real estate was sold, and on the 26th of that month, the administratrix filed her final account and tableau of distribution, charging herself with sum total of sales as cash, less $23.20, a bid that was not paid, but taking care to charge herself with $5.25 of the same bid subsequently realized. The assets are proposed to be distributed among the privilege and mortgage creditors, and are nearly consumed by them. The ordinary creditors oppose on various grounds.

Many items are opposed in oral argument and brief which are not specifically mentioned in the oppositions, nor is there a general clause in them under which the intention to oppose such items might be included. The representative of a succession is bound to prove each separate item of his account whether opposed or not. The opponent is a defendant or respondent. His opposition is an answer. If it does not contain a general clause indicating opposition to the whole account, (which may be assimilated to the plea of the general issue) the opponent will be confined in his contestation to those items specifically mentioned.

One of the opponents excuses the absence of specific objections, alleging that the administratrix made no tableau shewing who were creditors, or how she had converted the property into money, or by what authority she had paid debts, but had merely furnished a balance sheet, debiting herself with so much cash on the one side, and crediting herself with the sums paid or proposed to be paid to creditors on the other. This allegation is not sustained by an examination of the account.

It has been a widely-adopted practice in this State to file what the profession have called a tableau of debts i. e. a statement of the name, amount, and rank of all the admitted claims against the succession, preparatory to and in advance of their payment. The Code of Practice nowhere seems to require it, but such tableau serves many useful purposes. That Code does require that persons holding claims against successions shall present them to their representatives for recognition, who shall write that recognition upon the back of the claim or on an annexed paper. Arts. 984—7. This was done in this case. The opponents are recognized as creditors. The tableau that the Codes require is one of Distribution (C. P. arts. 988. 993. Civil Code, arts. 1168 et seq. new no. 1180 et seq.) which differs from an account technically in this, that such tableau is a statement of the manner in which the representative of the succession proposes to distribute the funds in hand, shewing what claims either of privilege, mortgage, or ordinary kind he is prepared to pay with their rank, while an account is what its name imports, i. e. a.

statement of the moneyed assets which the representative has received, debited to himself, and on the opposite side, a similar statement of the moneys he has actually paid out, credited to himself. It is in short an exhibit of his gestion so far as it has gone, and such account is intended by the law to be filed annually, and when it is a final account, the gestion is completed. When therefore a creditor alleges that he has not been paid, and complains that he has not been placed on an administrator's account and opposes it therefor, the allegation of non-payment contains within itself the reason why he has not been placed on the account. It is because he has not been paid that he was not placed on the account, since that shews only the amounts which the administrator has *paid*.

In the present case, the account shews the moneys received from sales, giving date and amount of each separately, so that the correctness of each item may be at once verified by examination of the *proces-verbaux* thereof, and on the other and opposite side is a statement or list of the claims paid, or *proposed to be paid*, to the officers of Court, for burial expenses etc., taxes, privileges, mortgages, commissions, each in its order, shewing a balance of $25.35 for distribution among the ordinary creditors.

A specific opposition, so far from being impracticable, was easy to be made, e. g. the taxes due the State, and those due the town of Monroe, are both placed under the head of privileges separtely, and any opponent can perceive the rank assigned them, amount, the year payable, etc.

The opponents claim that the administratrix should be charged with $43.65 for inventoried property not sold, but do not specify what articles are meant. They also insist that she should be charged with $17.95 the difference between the bid which was unpaid, and the sum that she collected from the delinquent bidder afterwards. She acted discreetly in receiving the small sum on the bid rather than burthen the succession with the expense of a re-advertisement of the articles which were appraised originally at $23.20. It appears she *neglected to sell* the 'sign' of the deceased, hung over his door or attached to the store, and which was appraised at $4.50. She has been charged with this sum.

If there were no graver matters than these complained of touching proceedings that are exceptionally regular in form, and pains-taking in accuracy, we should have little trouble in disposing of them, but the rank and priority of mortgage is involved, and also the right of the creditors to include the life insurance Policy of deceased among his succession effects.

D. F. Conover & Co. holds a note of deceased secured by mortgage upon a lot with brick store upon it, which was recorded October 28th, 1875. Thos. N. Conner holds a judgment against the deceased upon a claim for building the store, in which his privilege as contractor, builder.

and furnisher of materials is recognised, dating from 29th. Nov. 1869, and which privilege had been recorded on that day. He also holds a note for materials furnished in repairing the store, which had been recorded July 21st. 1875. Conner's two privileges have precedence therefore over Conover's mortgage upon the proceeds of sale of that property, and the administratrix thus ranked them.

Conover & Co. claim also a privilege as vendor upon the jewelry which formed part of the stock of deceased. The note which is secured by mortgage is the same that was given for the jewelry, it is alleged, but it is not so expressed, and if it had been, it was not recorded. Recording a mortgage upon the brick store and lot cannot be considered a preservation of a privilege upon a lot of jewelry, nowhere expressed either in the note or mortgage. Nothing was of record to connect the jewelry with the note, and the creditor permitted it to be sold with a mass of other movables.

One of the opponents contests the right of Conover & Co. to appear in court to claim anything, because David F. Conover is the only person who composes that firm. It is sufficient answer to this to say that David F. Conover resides in Philadelphia, and does business there under the style of D. F. Conover & Co., and the prohibitory law invoked by opponent does not assume to control the assumption of such business name outside of the jurisdiction of this State.

The mortgages of Younge and others were paid out of the fund arising from the sale of the property specially mortgaged to them except $127.59 which was properly ranked as an ordinary claim. The rent demanded of the widow for four months occupation of the marital domicil was properly rejected under every aspect. Civil Code, art. 2391 new no. 2422.

The deceased had insured his life for four thousand dollars in favor of his wife and children. The widow collected the amount of the Policy, and did not include it among the effects of the succession when she filed her account. The opponents allege that the sum thus received by her belongs to the succession—that the premiums paid by the husband on this policy were from the community fund, and the amount of the policy when collected must belong to the same fund—that the husband cannot transfer or donate to the wife community property to the prejudice of the creditors of the community—and if she acquired it by the *stipulation pour autrui*, it is null because forbidden.

The point has been twice before this court. In Hearing's case (26 Annual 326.) there was an alleged separation of property between the spouses, but in that of Clark (27 Annual 269.) as in this, there was a community of acquets. The facts of this last case present the decision in bolder relief than is likely to again occur. Clark and his wife died on

same day. His death was a few hours before hers. The husband or in other words, the community owed rent for the house in which himself and his wife lived. He had but little property, not enough to pay his rent. He had insured his life in his wife's behalf. His lessor, unable to realize the rent from his scanty effects, sought to make this life-policy answerable for it. It was held that the money derived from his policy belonged to his wife's succession, and it was decreed to her legatees. The objections made by the opponents in the present case are the same as those considered in these cases, and pronounced untenable. The policy on the decedent's life issued to his wife for the benefit of herself and children. The premiums were paid by the husband out of community funds, over which he had control as head and master thereof. The most that could be claimed would be the reimbursement of the premiums to the community, but we do not think that claim well founded.

The parish court amended the account by increasing the balance for distribution among the ordinary creditors by a small sum.

It is ordered, adjudged, and decreed that the judgment of the lower court is affirmed the costs of appeal to be paid by opponents.