## No. 13,707.
### SUCCESSION OF ADOLPH C. LOEPER.

### SYLLABUS.

1. A creditor holding under an act importing confession of judgment a special mortgage with the clause *de non alienando* has the right to enforce his mortgage by executory process, though the debtor be dead and his succession be under administration. The creditor has the right to have an order which

the administratrix has obtained for a probate sale of the property mortgaged, set aside, though it had been granted prior in date to an order of seizure and sale which he, himself, had obtained, unless he has lost that right by *laches* or has estopped himself by his acts: mere priority of dates of the orders is not determinative which of the two shall prevail, but the special facts of each case control the situation.

2. The mortgage creditor is not estopped from enforcing his mortgage by executory process by having consented to a probate sale and bidding at an offering of the property at such sale, when his consent was given upon conditions which the administratrix had violated, and no sale had been made under the order consented to.

A PPEAL from the Civil District Court, Parish of Orleans—*St. Paul, J.*

*J. Zach Spearing,* for Mrs. Alvine Teller, Plaintiff in Rule, Appellee.

*Henry Chiapella,* for Widow A. C. Loeper, Administratrix, Defendant in Rule, Appellant.

STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J.  On the 21st of May, 1897, Adolph C. Loeper granted a special mortgage with the clause *de non alienando* in favor of James C. Rodd, agent, to secure the payment of a note for two thousand two hundred dollars, dated May 21st, 1897, payable one year after date, with interest thereon at eight per cent. per annum from date until paid, and also the payment of attorney's fees and costs, on the undivided half of certain real estate in the city of New Orleans, known as Loeper's Park, which was fully described in the notarial act in which said mortgage was granted.  The act of mortgage imported confession of judgment and by its terms the mortgagor consented and agreed that in the event of the notes not being punctually paid at maturity, the mortgagee, or any other holder of the notes, should cause the mortgaged property to be seized and sold without the benefit of appraisement.

The property so mortgaged belonged to the mortgagor as his separate property; the other undivided half of the same property belonged to the wife of the mortgagor as her separate paraphernal property.  Adolph C. Loeper, the mortgagor, died intestate on the 30th of November, 1899. On the 3rd of January, 1900, his widow (Louisa Bader) applied to the District Court to have an inventory taken and to be appointed admin-

istratrix of his succession. An inventory was accordingly made on the 20th of January, from which it would appear that the entire assets of the succession consisted of this undivided half of Loeper's Park, valued at thirty-five hundred dollars, and the stock and fixtures thereon, valued at twenty-five dollars. Letters of administration issued on the 14th of January, 1900.

On the 16th of January, 1900, the administratrix presented a petition to the District Court, in which she averred that there were privileged mortgage and ordinary debts due by the succession and there were no funds on hand to liquidate the same; that it was necessary, in order to realize sufficient sums to pay the same, that the immovable property of the succession should be sold. After describing the property inventoried, she prayed that the same be sold at auction by Alfred C. Greene, auctioneer, on the following terms and conditions: "One-half or more cash, at the option of the purchaser, the balance on a credit of one and two years, represented by notes bearing eight per cent. per annum interest from date of adjudication until paid, and secured by special mortgage and vendor's privilege on said property, together with the usual security clauses, the pact of non-alienation, the five per cent. fees in favor of the attorney who may be employed in case of judicial proceedings, the transfer of insurance policy to holder of the mortgage notes, the purchaser to assume the taxes of 1900 and to pay all the United States internal revenue stamps on act of sale over and above his bid, and to make a ten per cent. deposit with the auctioneer at the time of adjudication, act of sale to be passed before E. J. Barnett, notary public, at the expense of the purchaser."

The district judge upon the same day ordered the sale applied for, to be made by Alfred C. Green, auctioneer, after the legal delays and advertisements and on the terms and conditions prayed for.

On the 23rd of March, 1900, the property was offered for sale and at this offering one William Schroeder was the last and highest bidder, for the price of thirty-six hundred dollars. The other undivided half of Loeper Park, which belonged to the widow of Loeper, had been advertised for sale at public auction on the same day, but was not sold. Schroeder refused to make the deposit required to be made by the terms of sale and to be bound by his bid.

The administratrix took a rule upon him to force him to compliance, but this rule never went to trial and was discontinued. A compromise was effected between him and the administratrix, by which he was re-

leased from all responsibility upon his bid on payment of seventy-five dollars to the administratrix.

On the 24th of May, 1900, the administratrix filed a supplemental petition, in which, after reciting the above facts, she prayed *de novo* for a sale of the same property upon the same terms upon which it had been offered before, the sale to be made by Denis & Danziger, auctioneers. On the 21st of June, 1900, *Mrs. Alvine von Lotlen, widow of James Teller,* appeared in court, through her attorney, and after reciting the fact that she was the holder and owner of the mortgage note executed by Adolph C. Loeper, on his undivided half of the property described as Loeper's Park, she averred that the administratrix of this succession, without notice or knowledge of mover, obtained an order from the court on May 24th, 1900, ordering the sale of the said property on terms of one-half or more cash, at the purchaser's option, and the balance at a credit of one and two years, represented by notes bearing eight per cent. interest per annum from the date of adjudication until paid; that the said order was improvidently granted, and should be set aside for the reasons, that, on January 16th, 1900, the administratrix of this succession obtained an order for the sale of the said property, under which said order an adjudication of the said property was had and made; that the said adjudication should have been enforced by the administratrix, but that she, without any warrant or authority in law, and without any legal justification, released, or pretended to release, the adjudicatee from his obigation under the adjudication; that such action on the part of the administratrix was beyond her power and authority, and was damaging to the interest of mover and of this succession; that the said administratrix should be condemned and ordered to enforce the said adjudication, or in default thereof she and her surety should be held in damages.

That the said order, obtained on May 24th, 1900, was improvidently granted for the further reason that the terms of sale as fixed and stated in the said order were illegal and contrary to the wishes of mover, and infringed upon and derogated from her rights as the holder and owner of the above described note, which was secured by first mortgage and lien on the said property by said act before said Barnett, notary public. on May 21st, 1897, which said act contained the pact *de non alienando;* that under the terms of the said act of mortgage, mover was entitled to have said property sold for cash and without appraisement, whereas the said order fixed the terms as part on credit, and under the law the prop-

erty, if sold under the said order, would be sold subject to the appraisement in the inventory in these proceedings; that, as afore alleged, mover had no notice of the intention of the administratrix to apply for the said order; that, for the reasons above alleged, the said order was improvidently granted on May 24th, 1900, and should be avoided, annulled and set aside.

In view of the premises she prayed that the order of the court granted on the 24th of May, 1900, should be vacated, annulled and set aside.

In the meantime Mrs. Teller had, on June 1st, 1900, filed a petition in the District Court in which, after making the allegations usual in petitions for executory process, she, as holder and owner of the Loeper mortgage note, applied for and obtained an order for the seizure and sale, without appraisement, of the mortgaged property for cash, to pay the said note, interest and attorney's fees and costs. Under this order the sheriff seized, and he has still the property in his possession under seizure.

The administratrix answered the rule taken upon her for the setting aside of the second order of sale. She averred:

First—That plaintiff was not authorized by law to proceed summarily by rule.

Second—That plaintiff in rule and her agent and attorney in fact. James T. Rodd, were estopped from objecting to a sale on terms partly cash and partly on credit, by their conduct, viz: by allowing the property to be put up at auction on a prior occasion, viz: on respondent's application as administratrix, on March 22d, 1900, by Alfred Greene, auctioneer, on terms of sale identical in all respects with the terms of sale which were now complained of.

Third—That plaintiff in rule and her agent and attorney in fact, James T. Rodd, were estopped by conduct, viz: by bidding at such prior sale on terms of cash and credit identical in all respects with the present terms of sale, and by acquiescing in said prior sale of said property on such terms, partly cash and partly on credit.

Fourth—That plaintiff in rule and her agent and attorney in fact, James T. Rodd, by such conduct, acquiescence, action, words and language, inaction and omission, etc., etc., had led respondent to believe that they would not assume a position inconsistent with that assumed heretofore, and on the faith of which a new application for sale of the property was made by the respondent, after the first adjudication and sale had fallen through, by reason of misunderstanding with the adjudicatee.

Fifth—That respondent was compelled to abandon the first adjudication made on March 22d, 1900, to Wm. Schroeder, because there had been a misunderstanding on his part as to the quantity of land being sold, and because by the recent death of Auctioneer Alfred C. Greene, respondent could not prove the adjudication against the denial of said adjudicatee, William Schroeder, and could not have had the act of sale and *proces verbal* signed by the officer designated by the order of court.

Sixth—That it was to the interest of the succession and of all its creditors and heirs that the property be again put up at auction on terms similar to those of the first sale, and that it was to the interest of plaintiff in rule, as mortgage creditor in particular, that such course be pursued.

Seventh—That it would have been injudicious and unwise and expensive to attempt to enforce the adjudication of William Schroeder, and the delays and uncertainty of litigation would not justify such a course.

Eighth—That the property was now being advertised for sale and would be sold in a few days at public auction on terms of cash and credit which were satisfactory to plaintiff in rule and her agent, James T. Rodd, two months and a half ago, and ought to be satisfactory again, since nothing had happened since the first sale which would make a sale for cash more desirable than the first time.

Ninth—That terms partly cash and partly on credit were always more advantageous in the matter of sale of real estate at public auction than a cash sale, and that respondent had obtained the order of sale, in the best interest of all concerned.

In view of the premises respondent prayed that there be judgment in her favor as administratrix of this succession, rejecting plaintiff's claim and demand and dismissing the rule herein taken and for all costs of suit.

The District Court made the rule absolute and accordingly ordered that the order of sale granted by it on the 24th of May, 1900, on the supplemental petition of the administratrix ordering the sale of the real estate by Denis & Danziger be vacated and set aside at the cost of the succession.

The administratrix appealed.

## OPINION.

The evidence shows that the first advertisement and offering for sale of the undivided half of "Loeper Park" belonging to Adolph C. Loeper,

on the terms and conditions announced in the advertisement, were made under an order of the District Court rendered upon the petition of the administratrix of the succession. That this order was asked for after a verbal agreement to that effect had been entered into between Rodd, the agent of Mrs. Teller, and the executrix; that the consent of Rodd to this order and to those terms was based upon the promise of the administratrix (the wife of the deceased), who owned the other undivided half of the same property, and upon which Mrs. Teller had also a separate special mortgage, that her half of the property should be advertised to be sold on the same day and on the same terms; that this agreement was predicated upon the belief that a sale of the entire property upon the same day would be more advantageous to all parties than would be a sale of simply an undivided half. The evidence shows that Loeper's half of the property was offered for sale and that one Schroeder was the last and highest bidder, but that he refused to make the cash deposit required by the terms of sale, or to be bound by the adjudication to him, on various grounds. That a rule was taken against him to enforce specific performance of the bid, but that it was discontinued by reason of a compromise between the administratrix and himself, that he should be released from all liability by the payment of seventy-five dollars to the administratrix.

The evidence shows that Rodd bid also upon the property at the sale, and that after the refusal of Schroeder to take title efforts were made to have Rodd take title under the adjudication by substitution of his or Mrs. Teller's name as adjudicatee instead of Schroeder, but that they failed, for the reason that, although Rodd was willing to take the property under Schroeder as adjudicatee, upon the same terms that Schroeder had purchased, he was unwilling to have the adjudication made direct to him. It appears that Mrs. Loeper's half was not offered for sale, as had been agreed upon and as it had been advertised it should be, for the reason that she had placed a five thousand dollar lower limit as the price of her half of the property.

Pending negotiations looking to some new arrangement for the sale of the property, the administratrix obtained a second order for the sale of Loeper's half of the property upon the original terms of sale and under this order it was advertised to be sold, but no advertisement was made for the simultaneous offering of Mrs. Loeper's half of the same property on the same terms. Mrs. Teller then proceeded to the enforcement of her mortgage upon the property by executory process, and under

the court's orders it was placed and it still is under seizure. She then obtained a rule to be taken on the administratrix for the setting aside of the order of sale which she had obtained, and this rule being made absolute the administratrix appealed.

There can be no doubt under numerous decisions of this court of the right of the holder of a note secured by special mortgage on certain property with the clause *de non alienando,* to enforce the mortgage by executory process, notwithstanding the fact that the debtor had died and his succession was under administration. We do not understand that the correctness of that proposition is questioned in this case. The issue raised by the contention of the parties is whether, conceding that Mrs. Teller had the right to have proceeded in that manner, she is in a position, under the facts and circumstances of this particular case, to exercise that right, whether the situation is not such as to have caused her to lose the right.

. The administratrix maintains that the second order which she obtained can not be legally set aside in order to permit the sale of the property to be effected upon the order of the seizure and sale obtained by Mrs. Teller under executory process.

She relies to sustain her position upon two grounds:

First—The *priority in date* of the two orders of sale which she has obtained over that of the order obtained in the executory proceedings.

Second—The consent of Mrs. Teller that the property should be sold "inside of the succession," under an order to that effect obtained by the succession representative and the consequent waiver and abandonment by her of her right to have it sold under executory process.

This court, in Poutz vs. Bistes, 15 Ann. 636, and Moreno vs. Preston, 34 Ann. 875, refused to allow a mortgage creditor to proceed by executory process where the debtor had died and his succession was under administration, and the succession representative had obtained an order of sale in the probate court for the sale of the property before the mortgage creditor had obtained an order for executory process in the District Court. In the first of these cases the court said:

"The property seized under executory process had been inventoried in the Second District Court (the probate court) and had already been ordered to be sold by that court for the payment of debts. The subsequent order of the Sixth District Court for the sale of the same property was in conflict with the jurisdiction assumed by the Second District Court, and therefore irregular. The plaintiff, after the Second District

Court had issued its order for sale, ought to have applied to that court for a modification of the terms of sale, if he was not satisfied with the same. Any other rule would produce unnecessary embarrassment."

The decision in the Moreno case, in the 34th Annual, was based upon that of Poutz vs. Bistes, the court declaring that "the probate court having acquired jurisdiction over the property before any seizure was made, the order of sale (by the probate court) was properly rendered."

It will be seen that these decisions turned upon the question of the jurisdiction of the two courts, and not upon the mere fact of the *priority in the dates of the two orders.*

This court simply recognized and enforced the well known rule that where two courts have concurrent jurisdiction over the same subject-matter, the court first exercising the jurisdiction will be maintained in it as against orders of the other court issuing later.

The decision on the issues raised in the present proceeding does not turn on that phase of the question. The District Courts, under our present system, have jurisdiction fully over both probate and ordinary civil proceedings; therefore there is no clashing of the jurisdiction of courts involved.

That fact is alluded to in Walmsley vs. Levy, 36 Ann. 227, in which Chief Justice Manning, as the organ of the court, declared that it was not necessary to decide authoritatively in that case whether the precedence in point of time of the order of sale in the *mortuaria* was determinative of the question which order should prevail."

"That the dictum in Poutz vs. Bistes was seemingly based on the embarrassment which would be produced by a conflict of jurisdiction, *that such embarrassment could not exist in the case then before the court."* The Supreme Court, in that case, permitted the sale to proceed under the first order obtained (that obtained by the executrix in the *mortuaria* proceedings), but the court acted evidently upon the theory that no injury would result to any one thereby, that the rights of all parties could be and would be amply protected in the premises. It said:

"The lower judge maintained the creditor's injunction so as to prohibit the sale proceeding on the terms first prescribed, and dissolved it as to the absolute prohibition of sale under the order in the *mortuaria* and ordered that sale to proceed. The only reason for a modification of that judgment must be that the creditor prefers to be the instrument through the sheriff of making the sale and distrusts the fidelity of the executrix in accounting for the funds. He has provided for that contin-

gency by obtaining special security for himself, and it matters not un-
der that state of facts, therefore, whether the executrix make the sale
under her order or that to be made under his process."

The same issue was before this court in the Succession of Thompson,
42 Ann. 120, and in that case it was held that mere priority in the dates
of orders of sale, one obtained by the administrator of a succession, the
other under executory process by a party holding a special mortgage
with the clause *de non alienando,* was not determinative of the question
as to which order should prevail. In that case the first order had been
obtained by the succession representative. The court set aside and
allowed the sale to proceed under the later order under executory pro-
cess.

It is apparent from reading the opinion in the case that the court held
that this matter was to be determined in different cases by their special
facts. This court (Chief Justice Bermudez being its organ) referred
to the fact that the claim of the creditor rested upon an express con-
tract right. That neither the debtor's heirs nor his creditors could by
the death of the debtor acquire greater rights, privileges or immunities
than he himself possessed. The Chief Justice pointed out the great ad-
vantages resulting to a creditor from being able to proceed to the en-
forcement of his rights *dehors* the mortuary proceedings, and the em-
barrassments, delays and additional expense to which he would have to
submit by being forced to await the general final settlement of the suc-
cession.

Referring to the order of sale granted on application of the executrix
he said it was an interlocutory order, which the court itself might
*proprio motu* have vacated.

He said that while there existed no doubt that as a rule all the prop-
erty which a person dies owning becomes subject to the orders of the
probate court, for the benefit of creditors, it was equally true that such
jurisdiction was not so absolute as to strip the mortgage creditors of the
deceased of the right of proceeding summarily against such of said
property as may have been affected to them to satisfy some money claim,
*unless* it was shown that such creditor had directly or indirectly relin-
quished the same and had submitted entirely to the probate jurisdiction
over the mortgaged property. Neither could there be any doubt where
a creditor fails to apply within a reasonable delay for executory process,
and the probate court assumes jurisdiction over the property and on
proper proceedings directs the sale, the creditor would be estopped by

his *laches* from subsequently questioning the order of sale so as to press a claim for executory process against it.

That in cases of acquiescence, express or implied, or of *laches,* his only remedy would be to apply for a modification of the terms of sale when not *cash,* if those fixed infringed on his preexisting rights to different conditions; that the cases to which counsel of appellant referred (in that case) showed that the creditor had either formally or inferentially or by his *laches* in some way acquiesced in the probate jurisdiction and he was not permitted afterwards to resort to executory process. The court was of opinion in the case then before it that the executrix had acted with undue haste in obtaining the order for a probate sale; that she had not afforded the mortgage creditor the proper time or delay in which to take out executory process.

It appears that the executrix had obtained the order of sale six days after her appointment and more than a month before the return of the inventory into court. The court was of opinion that a mortgage creditor praying for executory process in the same month in which his debtor died would seasonably enforce the right to executory proceedings. Our own opinion accords with the views expressed in the Thompson case. There should be no unseemly haste to obtain what has been designated *"scrambling possession"* of the property and funds of a succession. We think each case should stand on its own facts. Delay in applying for executory process would not *per se* and necessarily evidence *laches,* for there might be special reasons in some particular case why in the general interest of heirs and creditors matters should be held for a time in abeyance.

In the case before us there is no evidence that there exists any special or judicial mortgage priming that of Mrs. Teller, nor that there are any creditors clamoring to be paid. If such there be, the cash sale which she insists upon, however much it might increase the price to be obtained for the property, would not place the succession representative in funds to pay the pressing claimants.

A more difficult feature of this case is found in the part taken by Mrs. Teller and her agent, in respect to the manner of the sale of this succession property. Mr. Rodd unquestionably gave his consent to the first order of sale and to the first offering of the property at public auction. He himself bid upon the property at the offering made under that order. The authorities are to the effect that a party holding a special mortgage must stand upon his right of summary proceedings; that if he waives

or abandons it he can not later reassert his original rights and withdraw a prior consent which he may have given for ordinary proceedings to be followed. Gurley vs. Coquet, 3 N. S. 498; Succession of Patrick, 25 Ann. 155; DeGruy vs. Hennen, 2 La. 457; Oliver vs. Decuir, 31 Ann. (not reported), and 31 Ann. 112. Mrs. Teller did not herself proceed by successive proceedings or by simultaneous proceedings *via ordinaria* and *via executiva*. She did consent by agreement with the executrix that the latter should sell the property in mortuary proceedings, and her agent bid at the sale made under .the proceedings so authorized. This was done, however, upon conditions and under promises which were not carried out, and the order under which the proposed sale was to be made was withdrawn and a new one obtained, which has not yet been carried out. We do not think Mrs. Teller has gone too far to recede, nor do we think she has forfeited any of her legal rights, under her mortgage. She was entitled to have the second order of sale obtained by the administratrix set aside and to proceed by executory process under her mortgage. We are of the opinion that the District Court is correct in its judgment, and it is hereby affirmed, costs to be borne by the succession.