146 So. 738

**ROBERTSON v. CAMBON.**

**Succession of CAMBON (two cases).**

**No. 31300.**

Feb. 27, 1933.

Spencer, Gidiere, Phelps & Dunbar and W. B. Spencer, Jr., all of New Orleans, for appellant.

H. L. Hammett and E. M. Cahn, both of New Orleans, for appellees.

LAND, Justice.

Plaintiff has instituted the present suit to recover from defendants, Maurice C. Cambon, succession of Sylvester J. Cambon, and succession of Dr. Ferdinand J. Cambon, the sum of $10,458, with interest on $2,000 from November 28, 1928, until paid; on $1,022 from December 15, 1928, until paid; on $3,000 from January 2, 1928, until paid; on $600 from May 10, 1928, until paid; on $2,000 from May 20, 1928, until paid; on $700 from June 26, 1929, until paid; on $1,000 from June 28, 1928, until paid; and on $136 from July 9, 1928, until paid.

Plaintiff prays for judgment against defendants, individually and in solido, on the ground that he gave these amounts on the above dates to the commercial partnership, composed of Maurice C. Cambon, Sylvester J. Cambon, and Dr. Ferdinand J. Cambon, for investment, and received from that firm certain promissory notes, all of which were forgeries.

The suit has been brought against the defendant Maurice C. Cambon, individually, and as testamentary executor of the successions of Sylvester J. Cambon and Dr. Ferdinand J. Cambon.

The answer filed by the defendant Maurice C. Cambon admits his residence in the parish of Orleans, amicable demand by plaintiff, and that he is the duly appointed and qualified testamentary executor of the successions of Sylvester J. Cambon and Dr. Ferdinand J. Cambon, but denies that defendant was a member of the real estate firm of Cambon

Bros., and all the other allegations of plaintiff's petition.

From a judgment rejecting his demand and dismissing his suit against all of the defendants, plaintiff has appealed.

1. The trial judge declined to render judgments in this case against the successions of Ferdinand and Sylvester Cambon, deceased brothers of the defendant Maurice C. Cambon, on the ground that these successions had been filed in the civil district court and allotted to Judge Gleason of Division D, and therefore the trial judge of Division A had no right or jurisdiction to entertain suits against those successions, and render judgments against them that would be binding upon the successions or upon the creditors of same.

2. The trial judge also dismissed the petition against the defendant Maurice C. Cambon, on the ground that he was not a member of the real estate firm of Cambon Bros.

■ The plaintiff presented his claims to the testamentary executor of these successions, and he refused to acknowledge them. Plaintiff, therefore, had the right, under article 986 of the Code of Practice, to bring this action in the civil district court against the testamentary executor of these successions in the ordinary manner, and to obtain judgment in the same manner as in other cases, as provided in the article of the Code of Practice above cited.

■ This court has repeatedly held that the civil district court for the parish of Orleans is but one court, composed of several divisions. Byrnes v. Byrnes, 115 La. 275, 38 So. 991; State ex rel. Du Barry v. Judges of Civil District Court, 52 La. Ann. 1255, 27 So.

1031; Succession of Kelly, 157 La. 585, 102 So. 678; Succession of Loeper, 105 La. 780, 30 So. 131; Block & Sons v. Marks, 47 La. Ann. 107, 16 So. 649; Constitution of 1921, art. 7, §§ 81 and 36.

■ Besides, the litigant in a suit has no control over the allotment of the case in the civil district court. It is entirely in the hands of the clerk, and it is but a chance as to what division a suit may be allotted.

■ Our conclusion, therefore, is that the trial judge of Division A of the civil district court had the right and the jurisdiction to try this suit, and to render judgment herein against these successions, although opened in Division D of that court.

■ 3. The evidence in the case clearly establishes the fact that the real estate firm of Cambon Bros., composed of Sylvester J. Cambon and Dr. Ferdinand J. Cambon, received for investment from plaintiff the various amounts stated in the petition; that the individual members of that firm embezzled these amounts; and delivered to plaintiff forged notes as evidence of the pretended investments made by them.

Plaintiff, therefore, is entitled to recover against the successions of Sylvester J. Cambon and Dr. Ferdinand J. Cambon the amounts claimed with interest, as set out in his petition.

■ However, as a real estate firm is an ordinary partnership, the judgment in this case must be rendered against these successions jointly, and not in solido. Civ. Code, arts. 2872, 2873.

4. The question as to whether the defendant Maurice C. Cambon was a member of

the real estate firm of Cambon Bros., and is liable for his share of the partnership debt in this case, is purely a question of fact.

At the outset of this opinion, it is necessary to note that plaintiff's cause of action is based upon both the alleged existence of partnership in fact and upon partnership by estoppel.

Defendant Maurice C. Cambon, individually and as testamentary executor, filed exceptions to compel plaintiff to elect upon which cause of action he prosecutes the suit. It appears at page 110 of the transcript that plaintiff elected to proceed with the case "on the allegation that Maurice C. Cambon was in truth and in fact a member of the defendant partnership."

Article 2801 of the Civil Code defines a partnership as follows: Article 2801: "Partnership is a synallagmatic and commutative contract made between two or more persons for the mutual participation in the profits which may accrue from property, credit, skill or industry, furnished in determined proportions by the parties."

Article 2805 of the Civil Code declares that: "Partnerships must be created by the consent of the parties."

■ The burden of proof is therefore on plaintiff to prove the making of a contract of partnership by Maurice C. Cambon with his brothers, and that a partnership in fact existed.

As part of plaintiff's evidence of a partnership in fact, he relies upon the record in Cambon Brothers v. Suthon et al., 147 La. 66, 84 So. 496, in which Maurice C. Cambon testified that in 1913 he was a member of a firm of Cambon Bros.; and upon two acts of sale, one in 1916 and the other in 1919, in which Maurice C. Cambon also appeared as a partner of a firm of Cambon Bros.

Maurice C. Cambon testified in the present case that, in testifying in the Suthon Case that he was a member of Cambon Bros., he had reference to the Terrebonne sugar firm of Cambon Bros., and not to the New Orleans real estate firm of Cambon Bros.

Maurice C. Cambon moved to New Orleans from Terrebonne parish about the year 1908, and in 1909 entered the government service as special deputy surveyor and assistant surveyor of customs. He was transferred from the surveyor's office to the Treasury Department in Washington, and then sent as an attaché to the American Embassy in Paris. He left New York for France on April 15, 1925, and returned April 16, 1927.

The real estate firm of Cambon Bros. was formed about the year 1914.

Maurice C. Cambon was engaged, prior to the year 1908, in the sugar business in the parishes of Terrebonne and Lafourche with his brothers, Sylvester and Ferdinand, under the firm name of Cambon Bros. The sugar firm owned a number of tracts of land in these parishes, and, after it stopped the cultivation of sugar cane, had a number of pieces of property in which the brothers of Maurice C. Cambon were interested with him under the firm name of Cambon Bros., the affairs of which were not finally wound up until the year 1928.

The acts of sale referred to, in which Maurice C. Cambon appears as a partner of Sylvester and Ferdinand Cambon, consists of a purchase in 1916 and a sale in 1919.

Maurice C. Cambon testified that this was a transaction of Cambon Bros., the sugar firm, and is a purchase and sale of property by that firm in Terrebonne parish, as a reinvestment of money of the sugar firm, resulting from certain sales in the parish of Terrebonne, as shown by act of purchase in 1916, and later by act of sale in 1919, by the planting concern of Cambon Bros.

These transactions by no means show that Maurice C. Cambon was a member of the real estate firm of Cambon Bros. in the city of New Orleans.

5. In order to establish a partnership in fact between Maurice C. Cambon and his brothers, plaintiff also relies upon numerous statements and other representations by Sylvester and Ferdinand Cambon; upon their carrying the name of Maurice C. Cambon on their letterheads; upon renewal certificates of the real estate bond of Cambon Bros., in several of which it is stated that Cambon Bros. is a firm composed of Sylvester J. Cambon, Maurice C. Cambon, and Ferdinand J. Cambon; upon the inclusion of the name of Maurice C. Cambon in the firm of Cambon Bros. in city directories of the city of New Orleans, and in several applications for life insurance; and, finally, upon so-called admissions by Maurice C. Cambon that he was a silent partner in the real estate firm of Cambon Bros.

Maurice C. Cambon was the most prominent member of the Cambon family. He held a responsible federal position for over twenty years, and still retained that post at the date of the trial. He knew nothing of the ill practices of his brothers in defrauding the customers that came to their real estate office

to invest their funds. He had no knowledge of his brothers' real estate business. He was wholly ignorant of their shameless dealings in forged mortgage notes. In fact, his brothers enjoyed his complete confidence, respect, and affection at all times, until his return from Paris, April 16, 1927, when he discovered, for the first time, that they had purloined from the bank box, and had disposed of, $72,000 in securities belonging to his wife, as well as the mortgage notes belonging to him, leaving him penniless.

The trial judge accepted as true the testimony of Maurice C. Cambon that he was not a partner, and had never contracted to be a partner, in the real estate firm of Cambon Bros.

In disposing of admissions claimed to have been made by Maurice C. Cambon, the trial judge says in his opinion in the case: "Now, there is a statement of three or four witnesses that Maurice Cambon told them he was a partner. As I do not believe that he was a partner, even though he did make these statements and I will not pass on whether he did or not; if he was not a partner, that could not make him one. If he had no contract with his brothers to be a partner, so he could participate in the profits and losses, he was not a partner, even though he made the false statement he was.

"As I said, this case is not one of estoppel, where some one was induced to deal with the firm, because some man stated he was a partner, but the suit is based on the bald fact that Maurice was a partner."

We agree with the able trial judge, both in his finding of fact that Maurice C. Cambon

was not a partner in fact, as well as in his statement of the law applicable to the case.

Maurice C. Cambon testified that he had never discussed with Ferdinand and Sylvester Cambon any of the business affairs of that firm; that he had never given them any advice about conducting the firm; that he had never received any of the profits of the firm; and that he had no written or verbal contract of partnership with the real estate firm of Cambon Bros.

Maurice C. Cambon married in the year 1914, and lived with his wife and children in the same household with his two brothers, Sylvester and Ferdinand.

Mrs. Maurice Cambon testified that, during the sixteen years of her married life, she had never heard Ferdinand and Sylvester discuss with her husband any real estate business, nor had she ever heard them discuss, or ask her husband for any advice as to, the real estate business or any other business.

She further stated that, after the real estate firm of Cambon Bros. was formed in 1914, her husband was still employed in the custom house and, after that, he was engaged in the Treasury Department at Washington, and from there was sent, in the year 1925, to Paris as an attaché of the American Embassy and returned to New Orleans in the year 1927.

This witness was also accepted by the trial judge as "telling the absolute truth," to quote the language of his opinion.

We have failed to find in the record a single witness of plaintiff who had any personal dealings with Maurice C. Cambon as a member of the real estate firm of Cambon Bros. All of these witnesses dealt either with Sylvester or Ferdinand Cambon. Nor do we find any proof before us that Maurice C. Cambon ever put one cent in, or ever drew one cent out of, the real estate firm of Cambon Bros.

William A. Kernaghan, the dean of the real estate agents in the city of New Orleans, had numerous consultations about property with the real estate firm of Cambon Bros., but his dealings were always with Sylvester or Ferdinand Cambon, but never with Maurice C. Cambon.

Mrs. Morse, stenographer for the real estate firm of Cambon Bros., and W. J. Le Blanc, outside salesman of that firm, and Jules Wogan, who was dealing with that firm in real estate and was in their office every day, testified positively that they saw Maurice C. Cambon at the office only about noon and about 4 or 5 o'clock in the afternoon on a good many occasions; but he went there, as he testified, to take lunch with his brothers, and to ride home with them in an automobile owned and driven by Ferdinand Cambon.

All of these witnesses testified that no customer ever called at the office of Cambon Bros. for Maurice C. Cambon; that they had never seen him conducting any real estate business there; that they had never heard him discussing with his brothers any business affairs; but that all of the clients of Cambon Bros. asked either for Sylvester or Ferdinand Cambon, who alone attended to all real estate matters.

Mrs. Morse and Le Blanc also state that, on more than one occasion, Sylvester and Ferdinand Cambon consulted behind closed doors at their office with plaintiff and others seeking investment of funds.

■ The moral turpitude of the brothers of Maurice C. Cambon was such as to brand any statements made by them, that he was a silent partner in the real estate firm of Cambon Bros., as utterly false and fraudulent; besides, such statements, made to third persons dealing with the firm, are wholly irrelevant to prove that Maurice C. Cambon was a partner, in truth and in fact, of that firm, even had they been made in good faith.

Up to this point, plaintiff has failed to prove that Maurice C. Cambon was an actual member of the real estate firm of Cambon Bros.

6. As to the real estate firm of Cambon Bros. carrying the name of Maurice. C. Cambon on their letterheads, he testified that he had never authorized his brothers to put his name on their letterheads, that he had not known of the use of his name in this manner by Cambon Bros. until after his return from Paris, and that he had no knowledge of such use before that time. He further stated that he notified his brothers · to discontinue the use of his name on their letterheads. It is to be noted that the letterhead filed in evidence is dated April 4, 1927, while Maurice C. Cambon was still in France, and that the letterheads using Maurice's name were used only in 1925 and 1926, while he was in France, and were changed about a year before the deaths of the brothers in 1928.

■ 7. As to the name of Maurice C. Cambon appearing as a partner of Cambon Bros. in certain city directories of the City of New Orleans, he stated that he had no knowledge of this fact, until he returned from Paris, when he notified his brothers that he did not wish that his name appear as a partner, and that he had never authorized them to use his name as such in these city directories. The 1929 city directory shows a correction, with Maurice C. Cambon's name eliminated. Clearly, the action of his brothers in this matter was not binding upon him.

8. Regarding the bonding company's certificates of the renewal of the bond of the real estate firm of Cambon Bros., which contained Maurice's name as a partner, it is not even pretended by plaintiff that Maurice C. Cambon ever saw these certificates. Undoubtedly, these certificates were taken out by Sylvester or Ferdinand, and furnish only another instance of their misrepresentation of their brother's status.

9. Several of the applications for life insurance policies contain a recital that the real estate firm of Cambon Bros. is composed of Sylvester, Ferdinand, and Maurice Cambon. The data for these applications was furnished by the other brothers, and, reposing full confidence in them, Maurice C. Cambon signed the applications, when presented to him, without reading them. This is apparent from the fact that one of the questions in these applications was as to his occupation with the government, and the answer was "Clerk, United States Government," when, as a matter of fact, he was not a clerk, but special deputy surveyor and assistant surveyor of customs.

Besides, Maurice C. Cambon testified that he understood that the policies of life insurance were to be joint policies, payable to the survivor or survivors of the three individuals, and that he did not know that these policies had anything in them about any partnership. His testimony in this respect has the clear

ring of truth about it, as it was most natural and logical that he should have desired these life insurance policies to be made payable to him and his brothers as individuals, as they had lived, and did live, in the same household under the closest terms of fraternal intimacy, and he had no interest whatever in the real estate firm of Cambon Bros.

Plaintiff argues that Maurice Cambon signed those applications for life insurance because he knew that they contained true statements, and that he was in truth a partner in Cambon Bros. "If this were not true," says plaintiff in his brief, "is it not strange that his brother, Ferdinand, on February 20, 1919, said in his will: 'It is also my wish that my two brothers, namely, Sylvester J. Cambon and Maurice C. Cambon, shall continue in partnership during their natural life'? Had his brother, Maurice, not been a partner in Cambon Brothers, Ferdinand would not have said 'shall continue,' but would have said 'will form.' This language has but one meaning. Maurice C. Cambon was a partner in Cambon Brothers." Plaintiff's brief, p. 15.

Pretermitting any discussion as to the construction placed upon the will of Ferdinand, it is manifest that the declaration therein contained has no probative value at all in establishing a partnership in fact in this case, and is not binding in any way upon Maurice C. Cambon.

Besides, opposed to whatever importance Ferdinand's will might have is the so-called "secret document." Page 16. This document is a letter written January 15, 1925, entirely in the handwriting of Sylvester Cambon, and signed by Cambon Bros., per Sylves-

ter Cambon, and was found, at the same time as his will, in a locked drawer in the armoire of Sylvester Cambon. At the time of the discovery of this letter there were present Maurice C. Cambon and Messrs. Kernaghan, Wogan, and Peters. Maurice C. Cambon did not know of the existence of this letter, prior to the time it was found in the armoire, and no attempt was made by plaintiff at the trial to attack the authenticity of this letter on cross-examination of any of the witnesses present when it was found.

This so-called "secret document" or letter is as follows:

"New Orleans, La.,
"January 15/1925.
"To whom it may concern. This is to certify that my brother, Maurice C. Cambon, has never been connected with the Real Estate firm of Cambon Brothers. This firm is comprised of Sylvester J. Cambon and Dr. Ferdinand J. Cambon.
"[Signed] Cambon Brothers.
"Per S. J. Cambon."

Maurice C. Cambon swore positively that the above letter was wholly written by his brother Sylvester J. Cambon. No witness has contradicted this statement. No witness has disputed the presence of the three witnesses when the letter was discovered.

It is too late for plaintiff to suggest, for the first time, in his brief that the signature to this letter was not the true signature of Sylvester J. Cambon.

Interpret the will of Ferdinand J. Cambon as you may, whatever probative value it may have, if any, is completely neutralized by the letter signed "Cambon Brothers, Per S. J.

Cambon," denying that Maurice C. Cambon had ever been connected with the real estate firm of Cambon Bros. And, if you give to this letter any weight as documentary evidence, it must be considered as a corroboration of the testimony of Maurice C. Cambon that he was never a partner at any time in the real estate firm of Cambon Bros.

Manifestly, Sylvester J. Cambon repented of the wrong he had done his brother, Maurice C. Cambon, in using his good name to attract and defraud innocent investors who placed their funds in the hands of Cambon Bros., and attempted by this letter to right this wrong; while Ferdinand J. Cambon died unrepentant.

It is therefore ordered that the judgment appealed from be annulled and reversed.

It is now ordered that plaintiff recover judgment jointly against the succession of Sylvester J. Cambon and against the succession of Ferdinand J. Cambon, herein represented by Maurice C. Cambon, testamentary executor, in the full sum of $10,458, with interest on $2,000 from November 28, 1928, until paid; on $1,022 from December 15, 1928, until paid; on $3,000 from January 2, 1928, until paid; on $600 from May 10, 1928, until paid; on $2,000 from May 20, 1928, until paid; on $700 from June 26, 1929, until paid; on $1,000 from June 28, 1928, until paid; and on $136 from July 9, 1928, until paid.

It is further ordered that plaintiff's demand against Maurice C. Cambon be rejected, and that plaintiff's suit, as to this defendant, be dismissed.

It is further ordered that the defendants succession of Sylvester J. Cambon and succession of Ferdinand J. Cambon, herein represented by Maurice C. Cambon, testamentary executor, pay the costs of the lower court, and also the costs of appeal.