Succession of CARANNE.

No. 1101.

Court of Appeal of Louisiana. First Circuit.

April 17, 1933.

Merrick, Schwarz, Guste, Barnett & Redmann, of New Orleans, and Ellender & Ellender, of Houma, for appellants.

Aubin J. Daigle, of Houma, for appellee.

MOUTON, Judge.

Miss Caranne died in Houma, La., October 21, 1931.

In April, 1932, several lots of ground situated in Houma, with improvements, part of her estate, were sold to pay the debts of her succession.

Harry Hellier, administrator of her estate, on April 21, 1932, less than one year after her demise, filed a provisional account of his administration.

Dr. Jonas W. Rosenthal was carried on the account for $748; also Ellender & Ellender, attorneys at law, in the sum of $151.-13 as attorney's fees for collection of a note for the original amount of $1,700 reduced by payments to $1,500, secured by special mortgage in favor of the Bank of Terrebonne & Trust Company, carrying interest at 8 per cent. per annum; also for $71.22 as attorney's fees on a note of $700 due the said bank by the estate, secured by special mortgage, bearing 8 per cent. annual interest.

A. J. Daigle, attorney for the absent heirs in the succession, not being carried on the tableau for his fee, as such, filed his opposition to the homologation of the account.

The provisional account was homologated by the court in which the fee of Daigle, attorney for the absent heirs, was recognized, and is not disputed on this appeal.

It was, however, amended by reducing the claim of Dr. Rosenthal from $748 to $125, and by rejecting the claim of Ellender & Ellender, for attorney's fees, which had been carried on the account by the administrator, as hereinabove stated.

On this appeal, we are therefore concerned with the claims of Dr. Rosenthal and the attorneys, Ellender & Ellender.

Miss Caranne was treated by Dr. Rosenthal for bilateral glaucoma, an eye disease, very serious, as testified to by Dr. Rosenthal, and of which there is no contradiction. He treated her from the year 1926 and during 1931, up to a few months before her death, for a period of about five years. The doctor testifies that glaucoma, with which she was suffering, is a most serious disease, and leads to blindness, and it may be proper to remark, that there is no evidence in the record to indicate that this statement of the physician is not true. Glaucoma, Dr. Rosenthal says, means the hardening of the eyeball; that in her case it was stone-hard; that she came into his office in April, 1930; and that he had to perform an operation by puncturing the cornea of the eye on account of the hardness of the eyeball.

The seriousness of the operation is indicated by a charge therefor of $75 on the doctor's account, and which item was approved by the district judge as carried on the tableau.

In giving his qualifications as an oculist, Dr. Rosenthal says he had training in eye work in Columbia University, Knapp Memorial Hospital of New York, Royal Eye Hospital of Budapest, Hungary, and that he attended various clinics in Rome, Paris, and London. No doubt Miss Caranne received expert treatment, and the fact is there is no intimation that she did not.

It is shown that Miss Caranne got "all day visits" at the office of Dr. Rosenthal.

Miss Mildred Helmer, his secretary, explains that these "all day visits" are when the patient remains in the office from 9:30 until closing time or an hour before and occupies a room while the doctor gives alternate treatment to others.

Dr. Rosenthal says at first Miss Caranne found it necessary to have a companion with her when she came on her visits, but that after treatment had been established she came alone to his office, and was able to read and write.

Miss Helmer, his secretary, testifies that Miss Caranne often told her that she had received wonderful results from the doctor's treatment.

The account is for 162 visits, the first, for $10 and 161 at $8 a visit, making $1,288, and $75 for the operation, totaling $1,373, less $625 on account, leaving a balance of $748 for which the doctor was carried on the account, and reduced by the district judge to $125.

There are seven letters in the record written by Miss Caranne to Dr. Rosenthal, and from their tenor there is nothing to indicate that the treatment she was getting was not entirely satisfactory and beneficial. Besides, as these letters cover a period of over two years, the last one in April, 1931, there can hardly be any doubt that she had been benefited while under the care of Dr. Rosenthal.

It is well established by the testimony of Dr. Rosenthal and Miss Helmer that the charge for the number of visits is correct, and the only real issue is as to whether the amount claimed per visit is excessive or had been paid up to the balance of $125 allowed below.

Dr. Rosenthal says that Miss Caranne found that his charges at $8 per day were just, and that she expressed her regrets that she could not come to New Orleans more often, and the testimony of his secretary on this subject is that the decedent frequently told her she was pleased with the price the doctor was charging. The doctor says he was using Lavoglaukosan, a special expensive medicine, for her eyes, retailing at $2 per ampul, which was reduced to $5 for three

ampuls. His testimony is that he used approximately an ampul of that medicine a day. One dollar and one-half a day for the medicine would be a fair estimate of what the doctor was using in his treatment. As Miss Caranne received the treatment in 162 of her "all day visits," the medicine furnished by the doctor, at $1.50 per ampul, amounted to the sum of $243. A deduction of this sum from the balance of $748 claimed in his account, leaves a balance of $505 for his services for 162 visits, a fraction over $4 per visit. The doctor testifies that his charges of $8 per day for his work were fair and usual, and that Miss Caranne commended him for the price he was charging.

Miss Helmer, his secretary, says that she had so expressed herself.

Applying the reduction to the account for the medicine furnished, the charges would be more than fair as far as the record discloses. If they were unfair or excessive, it seems to us that it would have been easy to establish that fact, but no effort was made in that direction.

In her letter of December, 1929, Miss Caranne inclosed her check for $50 for, as she writes, "services rendered." In another letter, June 11, 1929, she incloses her check for $50 "on account of services rendered." In her letters of March, July, May, and December 15, 1930, she made no remittance, and in her last one, April 31, she inclosed her check for $50 without using the words, "on account" or "for services rendered." In these letters Miss Caranne makes no reference to her remittances as being partial payments on a past-due account.

In such letters, cordial and friendly, the trial judge says, it must be assumed that Miss Caranne would have made some reference to her account if only to assure the doctor that he had not been forgotten.

It appears from the account of Dr. Rosenthal that she had made in 1927 three payments, two of $50 and one of $75, three payments of $50 each in 1928, and similar payments in 1929 and 1930. Hence there was no reason why Miss Caranne, in writing the letters, should have been called upon to refer to the account of Dr. Rosenthal to remind him that he had not "been forgotten." Because in one of her letters she sent the check for "services rendered," the lower court drew the inference that she was keeping almost abreast of her account, and that there was only a balance of $125 due, but, in another letter, she said the check was sent "on account of services rendered." One letter balances the other in that respect, and the others inclose no checks and are silent on the question of account or of services rendered.

We cannot agree with our learned brother of the district court that the expression for "services rendered" found in one of the letters and for the lack of reference in the others, to partial payments on her debt, should be accepted as reducing the account of Miss Caranne to the amount decreed, and much less can we accept such an inference when in one of her letters she sends the check to be applied "on her account for services rendered." If there were no contradictory evidence, such an inference might be acceptable as proof of payment of the account, as interpreted by the district judge. Such, however, is not the situation, as it is shown by the unimpeached testimony of Dr. Rosenthal that the deceased agreed to the price charged for her visits, and, after treatment, admitted she had been benefited, and that his price for the services rendered was fair and just, and in which he is corroborated by the evidence of his secretary, Miss Helmer.

The doctor is not suing on a quantum meruit, but on a contract for the price agreed.

In this case the provisional account was filed, the judgment of homologation was rendered, and the appeal taken by Dr. Rosenthal within one year after the death of Miss Caranne.

Under Act No. 11, 1926, p. 11, the proof of the debt of liability of the party deceased must be established by the testimony of at least one credible witness of good moral character besides the plaintiff, or by written acknowledgment or promise to pay by the debtor.

Here the letters show that Miss Caranne had contracted the debt as appears from her letters; the only missing link being that she had not therein referred to an agreement to pay $8 per visit for the services she was receiving. It was shown by the testimony of the doctor that such was the price agreed, and in this statement he is supported by the evidence of Miss Helmer, and it is not contended that this lady was not a credible witness and of good moral character.

Such being the character of the evidence, it must be held, under the provisions of that statute, which have been considered in similar cases in many decisions, that Dr. Rosenthal has established his claim by contract for the amount carried on the account by the administrator.

■ The general rule is that the value of the services rendered is inadmissible to establish a quantum meruit in a suit under a contract, but such proof will be permitted to show the reasonableness of the contract and that it is one likely to be made under the circumstances. Succession of Piffet, 37 La. Ann. 871.

In that case a fee of $2,000 was recognized by the court in favor of Dr. Tebault. Mrs. Piffet, the decedent, intensely desired to be kept alive that she might make her will. At her solicitation, the doctor abandoned his other patients for a while to attend to her alone, and was promised the $2,000. The

court found that Mrs. Piffet coveted a few more days of life that she might dispose of her property according to her own will, and that the proof to show the nature of the services rendered by Dr. Tebault was admissible to establish the reasonableness of the contract.

Miss Caranne, the evidence shows, had no known relatives and was alone in the world. Without her eyesight, she was evidently helpless, and no doubt intensely desired its restoration, which appears from her many visits to New Orleans during a long period of time, and in the meantime submitting herself to a delicate operation of the eye.

It seems to us that the charge of $8 for an "all day visit," including the expensive medicine furnished, was not excessive, and showed the reasonableness of the contract price claimed by Dr. Rosenthal. The proof sustains the contract price, which was not excessive or exorbitant.

The proof also shows that, according to the payments made by the deceased, as carried on the account, the balance due Dr. Rosenthal amounted to $748 as was carried on the provisional tableau filed by the administrator, and which was erroneously reduced for the reasons above given to $125, as decreed by the district judge.

The next question presented for review involves the claim of Ellender & Ellender for attorney's fees carried on the provisional account and rejected by the court.

█ In the opposition filed by Daigle, attorney for absent heirs, a direct attack was leveled against the claim of Dr. Rosenthal but not as against the item for the attorney's fees carried on the tableau. In the prayer of the opposition by Daigle, it is only asked that the account be amended by striking therefrom "all items which are not fully proved." This sweeping generalization in the prayer of the opposition was not couched in language presenting an attack on the item for counsel fees as "The representative of a succession is bound to prove each separate item of his account whether opposed or not." Succession of Bofenschen, 29 La. Ann. 711. The prayer of the opposition was merely a call on the administrator for the discharge of his official duties.

█ Counsel Ellender & Ellender refer to authorities which hold that the opponent to an administrator's account can contest no item which he has not in specific or general terms opposed. No objections were urged by the attorneys to the proof introduced on the issue involving the attorney's fees. Objection to that evidence not being made, the pleadings of opponent must be considered as having been amended, authorizing its admissibility.

Hellier, in proving up his account, testified that Ellender & Ellender had collection of five mortgage notes for the Bank of Terrebonne & Trust Company. They, were, he says, anticipating the filing of executory proceedings on the notes and that he "prevailed upon them not to sue so as to eliminate additional advertising and Court costs for the Succession."

The two special mortgage notes placed in the hands of Ellender & Ellender for collection were among the five referred to and read in part as follows: The maker, Miss Caranne, binds herself to pay "additionally, as attorney's fees, ten per cent. of the principal and interest involved in this note, in case same is placed in the hands of an attorney-at-law, at maturity, for collection by suit, or otherwise."

The note for $1,700, which had been reduced to $1,500, was dated March 6, 1926, and was payable one year after date; that is, March 6, 1927. The other for $700 bears the date of February 25, 1927, and is also payable one year from date, hence on February 25, 1928.

As Miss Caranne died in October, 1931, these two notes had certainly reached their maturity when they were placed in the hands of Ellender & Ellender for collection, which the administrator says, they desired to realize upon through executory proceedings. They had the right to so proceed, as was held in the Succession of Loeper, 105 La. 772, 30 So. 131, where the court said a creditor who has a special mortgage has the right to enforce his mortgage by executory process, though the debtor "be dead, and his succession be under administration." They did not, however, so proceed at the request of the administrator who sold other property of the estate which was not covered by these two mortgages of the bank. From the sales effected by the administrator enough funds were realized to pay the debts of the succession, including the item fees for the attorneys which was carried on his account.

In the Succession of Burke, 107 La. 82, 31 So. 391, the Bank of Jennings claimed 10 per cent. as attorney's fees on a note which was presented by the cashier to the executrix and was approved for payment in due course of administration. Inasmuch as the note stipulated 10 per cent. attorney's fees in the event it should become necessary at maturity to place it in the hands of an attorney for collection, the bank claimed it was entitled to this allowance.

The court in the course of the opinion, page 85 of 107 La., 31 So. 391, 393, said, in reference to the claim of the bank for attorney's fees: "We hold not. It does not appear that the note was ever sued upon, nor payment thereof demanded through an attorney. Had such been the case [says the Court], the allowance for the attorney's fees stipulated for would have been proper; without it, it was improper."

By saying that it did "not appear that the note was ever sued upon," the court could not have meant that suit had to be brought on the note to entitle the bank to recover the attorney's fees, because, if such had been the meaning the court intended to convey, it would not have added, "nor payment thereof demanded through an attorney," because the words "sued upon" used by the court imply that a demand precedes or accompanies such action.

In the case above cited, it will be seen that the note had been presented, not by an attorney, but by the cashier of the bank to the executrix, and was classified in the proper schedule for payment. If the payment had been demanded of the executrix "through an attorney," the allowance for the attorney's fees stipulated would, we think, have "been proper" under the ruling of the court in the Succession of Burke.

■ Contracts of this character stipulating for attorney's fees must, after all, be interpreted in accordance with the language used in the note. Here the notes stipulate 10 per cent. for the attorney's fees if the notes are placed in the hands of an attorney at law at maturity for collection "by suit, or otherwise."

■ That they were placed in the hands of an attorney or attorneys for collection, after maturity, and that a demand on the administrator for payment, through the attorney or attorneys, is equally certain. According to the ruling in the Succession of Burke, we think the stipulated attorney's fees would have been recovered if its collection had been demanded through an attorney.

It will also be observed, in connection with the foregoing remarks, that the stipulation for attorney's fees in the notes herein says "for collection by suit or otherwise." It is true in the instant case that no suit was filed because, as explained by the administrator, the attorneys were prevailed upon not to proceed to save expenses for the succession. It was therefore arranged by consent between the administrator and the attorneys that funds would be realized by the sale of property not covered by these mortgage notes out of which the debts would be satisfied, including the attorney's fees. Under this arrangement, it was therefore understood that the 10 per cent. attorney's fees would be collected "otherwise" than by suit on the notes in question. This agreement was in keeping with the terms of the notes and the attorneys were entitled to their fees.

■ In the notes the stipulation was made that, if Miss Caranne, the debtor, defaulted in her payment at their maturity, she would pay 10 per cent. for the attorneys employed by the bank to enforce the collection by suit or otherwise. In such a contract the debtor accepts the burden of the contingent expenses for the employment of an attorney should he fail to meet his obligation of paying at the maturity of his obligation.

This obligation to pay attorney's fees is to take effect under the contract in the event that the maker of the note fails to pay at maturity of the debt. This constitutes a suspensive condition under article 2021, Civil Code. Under such an agreement, the obligee, upon the happening of the event, "has a right of which the obligor can not deprive him." Civ. Code, art. 2028.

In this case, the obligor, succession of Miss Caranne, through its administrator, could not deprive the Bank of Terrebonne of its right to the 10 per cent. for attorney's fees, after the failure of payment at the maturity of the notes.

Upon the failure of Miss Caranne to pay at that time, she incurred the obligation of paying 10 per cent. for the fees of the attorney or attorneys the bank might employ for the collection of the notes by suit or otherwise. At her death, she transmitted this obligation with her estate and the attorneys Ellender & Ellender, employed by the bank, were properly carried on the provisional account for their fees on the two notes in question, for the reasons above given.

It is therefore ordered, adjudged, and decreed that the judgment of homologation of the provisional account filed by Harry Hellier, administrator, in which it is decreed that the account of Dr. Jonas W. Rosenthal be reduced from $748 to $125 be and is hereby amended by increasing this reduced allowance to the sum of $748, as carried on said account.

It is further ordered and decreed that the decree in said judgment of homologation rejecting the item for attorney's fees of Ellender & Ellender in connection with the notes of the Bank of Terrebonne for the amount still due of $1,500, dated April 6, 1926, with paid interest to April 6, 1932, be and is hereby avoided and annulled, and that the attorney's fees on said item placed on the account for $151.13 be and are hereby recognized as legal and recoverable.

It is further ordered and adjudged that the decree in said judgment of homologation rejecting the fees of said attorneys on the mortgage note of $700 of said bank carried on said account for $71.22 be avoided and reversed, and that said amount of $71.22 as carried on the provisional account for attorney's fees be recognized as due and legal.

And it is further ordered that the judgment of homologation be reversed and amended in the particulars above stated; that, as thus corrected and amended, it be made the judgment of this court.

ELLIOTT, J., not participating.