IN

# OCTOBER, 1892.

---

### JUDGES OF THE COURT :

HON. FRANCIS T. NICHOLLS, *Chief Justice.*
HON. CHARLES E. FENNER,  ⎫
HON. LYNN B. WATKINS,    ⎪
HON. SAMUEL D. McENERY,  ⎬ *Associate Justices.*
HON. JOSEPH A. BREAUX,   ⎭

---

### No. 327.

### SUCCESSION OF N. C. BROWNLEE.

### OPPOSITION TO FINAL ACCOUNT.

44 917
109 365

44 917
114 659

1. A wife who at the death of her husband receives (as the beneficiary named therein) the amount of certain policies on his life, which the husband had taken out, and on which he had paid the premiums, can not be made by special opposition of a creditor to charge herself on the account filed by her as administratrix of her husband's succession with the amount of those premiums as an asset of that succession, and as resulting from a debt due by her to it.

2. In entering into those contracts the husband did not claim nor intend to act either as *negotiorum gestor* or as agent of his wife; he was not dealing with reference to nor upon any property of hers. The obligations of the assured created by the policies were his own obligations, and when extinguished by payment of the premiums the debts paid were his debts, and not those of his wife.

3. Even were there a situation, resulting from community relations, such that a wife would be as between herself and her husband liable for the premiums, she could not be held for that particular special item of indebtedness upon an

opposition made to her tableau of administration, especially where the opposing creditor does not allege that he is a creditor of the community; that it has been accepted by the wife, or that she has made herself liable as widow in community; that the community is insolvent, or that it has been liquidated, and that, as a result thereof, the wife has been found to be a debtor thereto. A wife would be entitled to a general settlement: *non constat*, but that on such settlement she would not be found its creditor.

4.   Where services have been rendered a succession upon the advice and with the consent of a particular creditor, he is estopped from contesting payment of the same when he concedes they have been properly performed and reasonably charged for.

APPEAL from the Second District Court, Parish of Bossier.
        *Watkins, J.*

*Joannes Smith* for the Administratrix, Appellee, cited: 29 An. 711; 38 An. 219; 28 An. 326; 33 An. 330; 26 An. 327.

*Land & Land* for Opponent and Appellant cited: 33 An. 322; 38 An. 219; 4 An. 146; 36 An. 819; 38 An. 700.

The opinion of the court was delivered by

NICHOLLS, C. J.   This case comes up on appeal in the matter of an opposition by S. Levy, Jr., claiming to be a creditor of the succession of N. C. Brownlee, to the tableau of administration filed in that succession by Mrs. N. C. Brownlee, who is the administratrix thereof.

The opponent, who is appellant, urges three grounds of opposition.

As the pleadings relating to the first ground are short and very clearly present the issue involved therein, we will transcribe them.

The first ground of opposition is as follows, viz.: "Respondent avers that N. C. Brownlee, during the existence of the marriage between him and the said Mrs. L. A. Brownlee, insured his life in her favor to the amount of $12,000, in three different companies or associations; that the premiums for said insurance were paid by said N. C. Brownlee out of the funds of the community existing between him and his said wife, and that on his decease his said widow took possession of said three policies, and collected thereon the sum of $12,000, which she retained as her separate property.

"Respondent further avers that of said premiums the amount of $743.40 was paid to the New York Life Insurance Co., represented

by T. B. Chase, of Shreveport, La., in six annual premiums of $123.90 each; first paid January 9, 1886; the further sum of $188.50 was paid to the Equitable Life Insurance Co., of New York, represented by S. N. Ford, of Shreveport, La.; the said insurance being for $5000 in each of said companies. And the further sum of $162.55 was paid on a policy for $2000, issued by the Ancient Order of United Workmen, of the city of Shreveport, La.

" Respondent avers that said Mrs. Brownlee is indebted unto the succession of N. C. Brownlee in the amount of said premiums paid by the community for the use and benefit of her separate estate, and which inured to her separate benefit and advantage.

" Respondent shows that when said policies were issued the said N. C. Brownlee was in embarrassed and insolvent circumstances, and that all or most of the premiums paid by N. C. Brownlee on said three policies were so paid out of moneys borrowed from respondent, which said advances form a part of the present indebtedness of said succession to respondent.

" Wherefore respondent avers that the said Mrs. L. A. Brownlee is justly indebted unto said succession in the aggregate amount of said premiums, with which opponent prays she be charged as administratrix in her said account." T. 18-19.

It will be noticed that there is no allegation in the opposition that Mrs. Brownlee has accepted the community of acquets and gains, or that she has in any way made herself liable as the widow in community—none that the community is insolvent, none that the community has been settled and liquidated, either *dehors* the succession proceedings or within them, and that, as a result of such settlement, the widow has been found its debtor for any amount; none that L. Levy, Jr., the opponent, is a creditor of that community, if any exists. It will be further noticed that there is no prayer for any general settlement of the community, nor any prayer for a judgment against Mrs. Brownlee for any amount as widow in community.

It will not, besides, escape attention that this case presents, neither as to pleadings and prayer nor as to parties, any of the features of a revocatory action.

It might well be that opponent should be a creditor of the succession of Brownlee and yet not be one of the community. It might well happen that the succession of Brownlee should be insolvent and

the community not, and that in a GENERAL SETTLEMENT and liquidation of the community, should one exist, Mrs. Brownlee, so far from being a debtor, might be a heavy creditor. The only reference to a community in the pleadings is the allegation that the policies mentioned were taken out during the existence of the marriage between Brownlee and his wife, and that the premiums upon the policies were paid by the husband out of the funds of the community.

Under the pleadings of the opposition as a whole, and under its prayer, these particular averments lose all significance.

The opposition, as it stands, is that of a person claiming to be a creditor of a succession, urging that the administratrix thereof is a debtor to the succession for a specific amount and a special item—that she has failed to make the amount of that indebtedness figure on the tableau as an asset of the succession, and that she should be made to do so.

We are of the opinion that the action of the district judge in rejecting this ground of opposition was correct. The opponent concedes that as between Brownlee and the insurance companies the contracts were legal—that the amounts paid to the companies in premiums by Brownlee were legally paid, as were the payments by the companies to Mrs. Brownlee of the amount of the policies.

There has not been any attack on these contracts or on those payments. It is admitted that contracts perfectly legitimate in their origin have been fully and legitimately carried out and executed.

The only question before this court is whether, as arising from those contracts, Mrs. Brownlee has become a debtor of her husband's succession. We think not.

In entering into the contracts of insurance Brownlee acted on his own behalf and as a principal, and was so dealt with by the companies. He neither claimed nor pretended nor intended to act either as *negotiorum gestor* or as agent of his wife. He was not managing her affairs nor dealing with reference to or upon any property of hers in taking out the policies.

The obligations of the assured created by the policies were obligations and debts of the husband not of the wife, and when those obligations were extinguished there was an extinguishment by payment of the husband's debts and not the wife's debts.

But it is said that through these policies the wife has obtained a large amount of money, and that this being so she should reimburse

to her husband's succession, particularly when it is embarrassed, the amounts paid out by him and which have so largely contributed to her happiness. Whatever moral obligation she may be under to take this view of the situation is exacted by no legal obligation to do so. Whether Mrs. Brownlee may be considered as having received the amount of policies under donations from her husband or through the operation of *stipulations pour autrui*, created in her behalf by her husband in the contracts between himself and the insurance companies, the fact remains beyond dispute both under the decisions of the courts and the admissions of opponents that she rightfully and legally received the same.

But the opponent says the succession is entitled to reimbursement under Art. 2408, C. C., under the line of decisions which declare that the community must be credited with debts of husband or wife paid by it (3 An. 611, 6 An. 634), and must be debited with separate funds of either spouse used to enrich it (4 An. 146, 36 An. 819, 38 An. 700), and those which declare that the husband's creditors may claim his community rights. 41 An. 348, 352.

He particularly relies upon the case of the Succession of Moseman, 38 An. 219.

We have already said that when Brownlee dealt with the insurance companies he was not acting with reference to or upon any property or estate of hers, separate or otherwise, but as a principal; and we have also said that the articles of the code relative to the community have no bearing in this case under the pleadings and prayer.

Assuming as true "that the husband's creditors can claim his community rights," there must first be a community and next community rights, and those established, liquidated and enforced in a legal way and contradictorily with proper parties.

We must, under the pleadings and prayer of this opposition, deal with Mrs. Brownlee as if there were no community and as if she were a stranger to any community. Even were matters otherwise, Mrs. Brownlee would be entitled to a full and general settlement of the community, and could not be held liable prior to the liquidation upon any special item at the instance of a creditor of her husband's succession and on opposition to her tableau of administration.

Even were it true that Brownlee expected and intended (which we have not the slightest reason to suppose he did) that his wife should reimburse him for premiums paid, and were it true that she would

be liable to make such reimbursement, it would be impossible for us to say (on the theory of a community) that Mrs. Brownlee owed that community a dollar—*non constat*, but that the community in liquidation would owe her.

The case of Moseman has no resemblance to this. In the first place, the proceeding there was in reality a direct settlement *inter se* of two sets of heirs of Moseman, and a partition and settlement of the second community, of which Moseman had been the head.

In such partitions and settlements there are many rights and issues properly raised and determined, in which the mere creditors of the father may have no legal interest and entitled to take no legal part.

In the second place the policies in the Moseman case were taken out for his own benefit when he was a widower, the premiums due were owing by himself individually and personally, but had been paid for out of funds which, as matters had shaped themselves, the children of his second marriage were entitled to have accounted for in the final settlement, and his separate estate ultimately charged in their favor for a portion of the same.

The second ground of opposition is to the payment of four months' wages to one Lemon, whose duties consisted in gathering and preparing for market the crops belonging to the succession. The necessity of the services and the compensation for the same are not questioned, and it is in evidence that opponent advised and consented to the same. There is no merit in the opposition.

The third ground of opposition is to the attorney's fee in the succession. The reasonableness of the fee is supported by evidence, which is sustained by the judgment of the district judge before whom all the proceedings were conducted. We see no reason to dissent from his conclusions.

For the reasons herein given it is ordered, adjudged and decreed that the judgment of the court below be and the same is hereby affirmed.