DAVIS et al. v. MAGNOLIA PETROLEUM CO. et al.

No. 5047.

Court of Civil Appeals of Texas. Texarkana.

April 13, 1937.

Rehearing Denied May 6, 1937.

King, Mahaffey & Wheeler, of Texarkana, C. E. Bryson, of Houston, Edwin M. Fulton, of Gilmer, and Wm. Hodges, of Texarkana, for appellants.

Walace Hawkins, W. H. Francis, and Roy C. Ledbetter, all of Dallas, Sam Williams, of Mt. Pleasant, C. E. Florence, of Gilmer, Lewis Rogers and Bruce Billingsley, both of Houston, and Wynne & Wynne, of Longview, for appellees.

HALL, Justice.

Appellants as children and grandchildren of C. M. Davis, deceased, brought this action in the form of trespass to try title against appellees as owners of the fee, leasehold, and mineral interests in and to 11/24 undivided interest in two tracts of land aggregating 126 acres located in Up-

shur county, Tex. Appellees answered by general demurrer and plea of not guilty.

The judgment of the lower court reveals that "a jury having been demanded, thereupon came a jury of good and lawful men, who, after being sworn and empaneled to try the cause, and who after having heard the evidence adduced upon the trial of the cause, was by agreement of all counsel discharged, and all matters of fact as well as of law arising upon the trial of said cause were submitted to the court for his consideration and judgment thereon." Judgment was by the court rendered against appellants that they take nothing by their suit and recover no interest in the land in controversy. From this judgment, the appellants have appealed to this court.

The undisputed evidence shows that the land in controversy was the community property of C. M. Davis and his wife, Mrs. M. A. Davis, and on June 3, 1920, the date of C. M. Davis' death, was used by them and several minor children as their rural homestead; that the widow, Mrs. M. A. Davis, together with at least two of her children, lived on this land until November 27, 1924, when she, joined by J. L. Davis, a stepson, conveyed same to the First National Bank of Gilmer, Tex. It is also undisputed that there were on the date of the death of C. M. Davis vendor's lien notes against the property in an amount in excess of $1,000, which notes were paid by Mrs. M. A. Davis from money she received as insurance on her husband's life. Had these notes remained unpaid, they would have been a valid subsisting lien on this property on the date of the sale of same by Mrs. M. A. Davis. R.S. art. 5538.

The appellees claim under the deed from Mrs. M. A. Davis and her stepson, J. L. Davis, to the bank.

The contention of appellants on this appeal are: (1) That nothing in the record evidences the fact that Mrs. M. A. Davis in executing the deed to the bank executed or exercised the power of community survivor; (2) the land in controversy being the community homestead of Mrs. M. A. Davis and her husband, and she not having qualified as community survivor, had no authority to convey the entire homestead in paying community debts which were not liens upon the homestead; (3) after a lapse of four years after the death of the husband, the wife, without qualifying under the statute (Vernon's Ann.Civ.St. art. 3669 et seq.) loses the power to sell the community estate to pay community debts;

and (4) the burden of proof was upon appellees to establish that Mrs. Davis sold the land in controversy to pay community debts existing on the date of the sale, and this they failed to do.

▮ We shall discuss these propositions in the order named. The deed under which appellees claim is as follows:

"The State of Texas, County of Upshur "Know All Men By These Presents:

"That we, Mrs. M. A. Davis, surviving wife of C. M. Davis, deceased, a feme sole, and J. L. Davis, of the County of Upshur, State of Texas for and in consideration of the sum of One Thousand Four Hundred & Fifty Dollars to us in hand paid by The First National Bank of Gilmer, Texas, a corporation under and by virtue of the laws of the United States of America, as follows: $167.00 cash in hand paid, the receipt of which is hereby acknowledged, and the cancellation and satisfaction and delivery of one certain promissory note due and payable to the First National Bank of Gilmer, Texas, executed by Mrs. M. A. Davis and son, Ed Davis, for the sum of $450.00, also the satisfaction and cancellation of a certain note due J. W. Wall signed by Mrs. M. A. Davis for the sum of $550.00, and also the settlement and satisfaction and cancellation of a certain note due Roberts & Oliver, signed by Mrs. M. A. Davis for the sum of $175.00, also the assumption of the taxes due on said land for the years 1923 & 1924, amounting to $108.00. Said above described indebtedness is community indebtedness created by C. M. Davis and Mrs. M. A. Davis during their married relation, except the note due Roberts & Oliver, said amount was due for the burial expenses of C. M. Davis, the deceased husband of Mrs. M. A. Davis.

"Have Granted, Sold and Conveyed, and by these presents do Grant, Sell and Convey unto the said The First National Bank of Gilmer, Texas, of the County of Upshur, State of Texas, all that certain tract or parcel of land described as follows: (Here follows description of first tract containing 108 acres and of second tract containing 18 acres)

"To have and to hold the above described premises, together with all and singular the right and appurtenances thereto in anywise belonging unto the said The First National Bank of Gilmer, Texas, its heirs and assigns forever; and we do hereby bind ourselves, our heirs, executors and adminis-

trators to Warrant and Forever ·Defend, all and singular the said premises unto the said The First National Bank of Gilmer, Texas, its heirs and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof.

"Witness our hands at Gilmer, Texas, this 27th day of November, A. D. 1924.
"Mrs. M: A. Davis
"J. L. Davis
"O. M. Davis
"Ed Davis
"Aubrey Davis."

This deed designates Mrs. Davis as the surviving wife of C. M. Davis, deceased, and also as a feme sole. Appellants contend that the recital "surviving wife of C. M. Davis, deceased," is merely descriptio personae, but we think the phrase more nearly denotes the capacity in which Mrs. Davis acted in making the conveyance. Our conclusion in this respect is strengthened by the terms of the deed itself which expressly conveys the full title to the entire tract of land and not the widow's undivided ½ interest therein, and by the large portion of the consideration for said land described therein as community debts. If she had been conveying her interest in this tract of land only and the deed had so stated, certainly it could not be contended that she had exercised her power as community survivor for the reason that such exercise would not have been necessary or required in conveying her interest, but when she conveyed the title to the whole tract of land with her ownership extending to an undivided ½ interest only, with power, however, as community survivor to convey the whole, it is conclusive, it seems to us, that she was conveying as community survivor and not as a party at interest. Carter v. Conner, 60 Tex. 52; Jones v. Harris (Tex.Civ.App.) 139 S.W. 69. In 49 Cor. Jur. p. 1293, § 125, it is said: "Where the donee of a power has also an estate or interest in the subject matter of the power, it is the general rule that a deed, will or other instrument executed by him will pass only his own interest or estate, and will not be treated as an execution of the power, in the absence of any reference to the power or other evidence of intention to execute it; *but it is otherwise where an intention to execute the power appears; and where one having power to appoint or convey the fee simple estate, and also having a life estate or other interest, executes a conveyance of the fee, the conveyance will be regarded as an execution of the power, be-*

*cause otherwise it cannot take full effect according to its terms."* (Italics ours.)

We shall next consider the proposition whether Mrs. Davis, after a lapse of four years since the death of her husband, lost her right to act as survivor of the community estate. We do not agree with this contention. The survivor of the community estate is not required to qualify as such under the statute in order to legally perform the duties and obligations as community survivor. The acts of a survivor when properly performed respecting the community estate are as legal and binding as though performed under an appointment of the probate court, and the right to act as community survivor would continue as long as there were debts legally chargeable to the community estate which were owing at the time the spouse died. In our opinion, a survivor could act for as long a time and as effectively without having qualified under the statute as one who had qualified under the statute. Ashe v. Yungst, 65 Tex. 631. In the case of Todd v. Shell Petroleum Corp. (Tex.Civ.App.) 85 S.W.(2d) 1049, writ refused, it was held that a widow who had qualified under the statute as community survivor could execute a deed in her capacity as such eighteen years after the date of her appointment. In this connection, we state that the wife as community survivor has the power to convey the community property of her and her deceased husband, even their community homestead, to pay debts existing at the time of his death which were a lien against the property, Bell v. Pirtle (Tex.Civ.App.) 69 S.W.(2d) 476. We understand, however, that appellants admit the correctness of the conclusion stated last above.

We shall next consider whether appellees discharged the burden resting upon them in establishing in Mrs. M. A. Davis the power as community survivor to sell the land in question. In this suit appellees claiming under the deed from Mrs. M. A. Davis to the bank had the burden of establishing: (1) That the land conveyed was community property of Mrs. Davis and her deceased husband; (2) that Mrs. Davis was the community survivor; and (3) that there were community debts owing at the time of the death of C. M. Davis which was a charge against the homestead, the land conveyed. As stated before, the undisputed evidence shows that the property in controversy was community property of Mrs. Davis and her deceased husband; she was the survivor of the community, and that on the date of C. M. Davis' death there were vendor lien notes against the property in an amount in excess of $1,000, which were paid by Mrs. Davis with the proceeds of insurance policies on the life of her deceased husband. There is no contention made that the money advanced by Mrs. Davis to liquidate the indebtedness against the land was repaid to her before she conveyed the same to the bank. The facts negative such idea. It is the settled law of this state, not controverted by appellants, that proceeds from an insurance policy on the life of the husband payable to the wife is her separate property. Martin v. McAllister, 94 Tex. 567, 63 S.W. 624, 56 L.R.A. 585, and cases there cited. To offset the effect of this well-settled principle of law, appellants introduced evidence seeking to establish the fact that the proceeds from the insurance policies was community property for the reason that C. M. Davis and his wife at the time the policies of insurance were taken out on the lives of each entered into an agreement whereby a parol trust was created, respecting the proceeds to be paid under such policies, for the benefit of their children. The testimony with respect to this phase of the cause was given by one witness, J. L. Davis, the son of C. M. Davis and the stepson of Mrs. Davis, and is as follows:

"Q. Tell the jury what the contract or agreement you had reference to, and who entered into this agreement and what the terms of the agreement were? A. Terms of the agreement, in the presence of all the children was that when either of them died —(interrupted)

"Q. Who made the agreement? A. Mother and Dad,—father and mother.

"Q. As I understand, the parties to the agreement were your father and mother? A. Yes, sir.

"Q. Will you tell the jury what the terms of that contract were? A. Agreement was this,—Father to Mother said, 'Ann, we want to understand whichever dies first, the other will pay the indebtedness, if there is any at our death, against the property so that we will leave our children something when we are gone.

"Q. Pay out what? A. Out of the insurance money.

"Q. Tell the jury now whether your mother carried insurance policy? A. Yes, sir, she did.

"Q. When was this agreement made? A. When they took out insurance, away 'back."

The witness testifies further to the effect ·that his stepmother never called upon him to reimburse her for the money paid by her to satisfy the lien on the land. The testimony copied above is all the evidence contained in the record upon which it is sought to engraft an express parol trust on the ·insurance money received by Mrs. M. A. Davis, so as to constitute it community property instead of separate property and thereby seriously endanger appellants' title to the land in controversy. Is this testimony sufficient to establish an express trust respecting the proceeds from the insurance policies? We think not. It has been many times held by our courts that to establish a parol trust the evidence must be clear, ·satisfactory, and convincing. 42 T.J. p. ·687, § 76, and authorities cited under note 14. As to the time when the trust agreement was made, the witness says that it was "away back when the insurance policies were taken out." That is the only date fixed by his testimony. The insurance money was to be used to pay indebtedness due on the property so that they would leave something for the children when the parents were gone. No certain property is indicated. Whether the father, C. M. Davis, had in mind the tract here in controversy no one knows. From this testimony, we cannot determine whether C. M. Davis and his wife owned the land in controversy at the time C. M. Davis made the statement attributed to him by the witness. The evidence does show, however, that C. M. Davis died in less than ten months after ·he purchased this land. We do not think this testimony satisfies the high standard fixed by law with respect to establishing ,a parol trust, and conclude that the proceeds from the insurance policies on the life of C. M. Davis was the separate property of Mrs. M. A. Davis. So it will be seen that the appellants met the requirements of the ·law with respect to the power of Mrs. Davis as community survivor to convey the community homestead by showing there existed .a debt against said land at the time of the ,sale, which was a lien thereon and which was owing by the community on the date ,of the death of C. M. Davis. On the date ·of the sale of the land by Mrs. Davis to ·the bank, she, having paid the vendor's lien notes held by Wall against said land ·out of her separate funds, was subrogated ·to the rights of ·he holder of the vendor's lien notes and undoubtedly had the power to sell said property and reimburse herself for the money theretofore paid out by her in satisfaction of the lien notes. She has a right to pay these vendor's lien notes against the land without being termed an intermeddler. Jennings v. Borton, 44 Tex.Civ. App. 280, 98 S.W. 445, writ refused. And it makes no difference whether Mrs. Davis intended to sell the property for the sole purpose of reimbursing herself or whether she knew she had the power to do so, the fact that the power existed and she exercised it would be sufficient to convey the whole community estate in the property; and this is true even though unsecured debts were included in the sale price of the land. Cage v. Tucker's Heirs, 29 Tex.Civ. App. 586, 69 S.W. 425. Moreover, one in good faith purchasing from a survivor is under no duty to see that the funds are applied properly. Sanger Bros. v. Moody's Heirs, 60 Tex. 96. In Crawford v. Gibson (Tex.Civ.App.) 203 S.W. 375, 379, writ refused, it is said: "The presumption of good· faith attends such sales [by community survivor], and the disproportion between the value of the property sold and the debt, in the absence of fraud, is unimportant. Manchaca v. Field, 62 Tex. 135."

█ As said in the beginning of this opinion, the district judge in this case was the trier of the facts as well as law, and no request was made requiring him to make findings of fact and conclusions of law, and none were filed. The judgment of the court below is that appellants "recover nothing and recover no interest" in the land in controversy, and it becomes our duty to affirm this judgment if there is any theory of the case under which it can be sustained. Citizens Mutual Life & Accident Ass'n v. Gillespie (Tex.Civ.App.) 93 S.W.(2d) 200; Snell v. Knowles (Tex.Civ. App.) 87 S.W.(2d) 871. In Johnson v. Archibald, 78 Tex. 96, 14 S.W. 266, 268, 22 Am.St.Rep. 27, opinion by Judge Gaines, it is said: "At all events, there being no conclusions of fact and ·law found in the record, if the evidence is sufficient to support the judgment upon any defense presented in the case it is to be presumed that the court found in favor of the defendants upon that issue."

Therefore, we feel warranted in holding in support of the judgment of the lower court that the district judge determined, as we have here, that the evidence offered by appellants to establish a parol trust respecting the insurance money used by

Mrs. Davis with which to pay off the vendor's lien notes against the property in controversy was insufficient to create such trust and that the deed from her to the First National Bank of Gilmer in the capacity as community survivor was effective as the conveyance of the entire community estate in the land in controversy.

The judgment is affirmed.

WILLIAMS, J., disqualified and not sitting.