DAVIS' ESTATE v. OKLAHOMA TAX COMMISSION.

No. 34785.  July 8, 1952.

*246 P. 2d 318.*

Bailey & Hammerly, Chickasha, for plaintiff in error.

R. F. Barry, W. F. Speakman, E. J. Armstrong, and R. E. Thompson, Oklahoma City, for defendant in error.

GIBSON, J. Seymour C. Davis died intestate on August 30, 1948, a resident of Grady county, Oklahoma, and his estate was administered upon with his surviving wife, Maurine Davis, as administratrix. The sole question in this case is whether or not the proceeds of insurance policies issued upon the life of Seymour C. Davis, one on May 13, 1947, for $50,000, and one on May 21, 1948, for $100,000, were subject to estate tax under the laws of Oklahoma. Two premiums on the first mentioned policy and one premium on the second policy were all paid from community funds of the deceased and his wife. The wife was named beneficiary in each policy. The wife survived her husband and the proceeds of both policies were paid to her by the insurer. Each policy provided that the insured might change the beneficiary at any time. The policies were issued and Mr. Davis died while the Community Property Law of this state was in force and effect. The case was submitted on stipulations and exhibits. The Commission entered its order taxing the entire proceeds of both policies, computing the total tax on the estate in the sum of $7,729.69. The administratrix paid the tax, under protest, and it has been placed in suspense pending determination of the protest. The administratrix appealed from the Commission's order.

The right to tax the proceeds of the policies is asserted under Tit. 68 O.S. 1941 §989e (A) (6), amended S.L. 1947, Tit. 68, sec. 3, p. 456, which provides that the value of the gross estate used as a basis for determining the value of the net estate shall include:

"Sec 989e * * * (A) * * * (6) To the extent of the excess over Twenty Thousand Dollars ($20,000.00) of the amount receivable directly, in trust, or as annuities, by all other beneficiaries, or under a joint policy by the survivior, of the proceeds of life insurance, by virtue of policies taken out by the decedent upon his own life and in which, at the time of death, the decedent had the right, directly or indirectly, to change the beneficiary or to convert the policy to his own use."

The administratrix contends that the order of the Commission was erroneous, in that where a husband insures his life, naming his wife as beneficiary, and the premiums are paid from the funds of the community, the proceeds of the policies will be regarded as a gift to the beneficiary, and that the Commission erred in holding the proceeds for taxation to the same extent as if the beneficiary had been some person other than the surviving spouse. The Commission contends that such proceeds become the separate property of the wife because they passed under the terms of the policies after the community had been dissolved by the death of the husband, and that the Community Property Act has nothing to do with the proceeds of these policies because they are governed by the terms of the policies.

Both policies were issued after S. L. 1945, Tit. 32, p. 118, became effective and prior to its repeal in 1949, and the 1945 Act governs as to questions on community property. The 1939 Community Property Act, discussed by the administratrix, is only of historical significance, and compliance therewith evidenced an intent by husband and wife to communize their property.

The 1945 Act specifically provides that all property acquired by either husband or wife during marriage shall be deemed community property and each spouse shall be vested with an undivided one-half interest therein.

This is a case of first impression before this court and when we look to other jurisdictions, having community property laws, we find conflicting decisions.

With reference to community property the Supreme Court of Texas, in Volunteer State Life Ins. Co. v. Hardin, 145 Tex. 245, 197 S.W. 2d 105, 168 A.L.R. 337, said that where there is no intention on the part of the husband to defraud his wife the proceeds of the policy on the life of the husband vested upon the death of the insured in the beneficiary named in the policy, even though the policy was taken out by the husband during coverture and the premiums paid out of community funds. It was further held that where the insured reserved the right, in the policy, to change the beneficiary, such beneficiary obtained no vested interest in the proceeds of the policy prior to the death of the insured who might divest the beneficiary of all interest in the proceeds by making a change of beneficiary. Martin v. McAllister, 94 Tex. 567, 63 S.W. 624, and other Texas decisions are cited. The Hardin case did not involve taxation of the proceeds of life insurance policies.

To the contrary the State of Washington holds to the following rule:

"In Washington, insurance or proceeds thereof are not mere expectancies or choses in actions, but are 'property', and, if premiums are paid from assets of community, insurance constitutes 'community property.'" Occidental Life Ins. Co. v. Powers, 192 Wash. 475, 74 P. 2d 27.

The same court has held that the interest of the wife in a community estate is not an expectant interest but a present, undivided one-half interest. Marston v. Rue, 92 Wash. 129, 159 P. 111; Schramm v. Steele, 97 Wash. 309, 166 P. 634.

Poe, Collector, etc., v. Seaborn, 282 U. S. 101, 51 S. Ct. 58; Hopkins, Collector, etc., v. Bacon, 282 U.S. 122; Bender, Collector, etc., v. Pfaff, 282 U.S. 127, construing the laws of several community property states, hold that, in the named states, the wife has a vested interest in the community income as distinguished from an expectancy, and the wife was permitted to file a separate return under the Revenue Act of the United States. As above stated, the 1945 Act provides that in Oklahoma each spouse shall be vested with an undivided one-half interest in the community property.

In re Coffey's Estate (1938) 195 Wash. 379, 81 P. 2d 283, held that wife's interest in community property is not a contingent or expectant interest but a present, undivided one-half interest, and the separate character of the separate interest of a spouse in community property continues as long as it can be clearly traced and identified. It is further held:

"Where premiums on insured's life policies were paid with community funds, insured's wife had undivided one-half interest in policies, insured's one-half interest could alone be included in his gross estate for purpose of computing inheritance tax, and statutory exemption was applicable to that portion."

The Coffey case dealt with the inheritance tax laws of the State of Washington. In the case of Lang, Executor, v. Commissioner of Internal Revenue, 304 U.S. 264, 58 S. Ct. 880, 82 L. Ed 1331, the United States Supreme Court held that only one-half of the proceeds of a life insurance policy of a decedent domiciled in the State of Washington, in favor of his wife, where premiums were paid out of marital community funds, is to be reckoned (less the permitted exemption) as a part of his gross estate for the purposes of the Federal estate tax. It was further held that the operation of the Federal estate tax law may depend on local law.

The Commission places great reliance upon the case of Newman v. Commissioner of Internal Revenue, 76 Fed. 2d 449. Therein it was held that the entire proceeds, in excess of the

exemption, of policies on the life of a Louisiana resident, which gave insured the right to change beneficiary, were a part of the insured's gross estate, for estate tax purposes, notwithstanding that the wife was the named beneficiary and that premiums on the policies were paid out of the income of the community of insured and his wife. The decision was by the Circuit Court of Appeals, Fifth Circuit, in 1935.

In 1940, and following the opinion in Lang v. Commissioner, supra, the same Fifth Circuit decided the case of DeLappe v. Commissioner of Internal Revenue, 113 Fed. 2d 48, wherein the court said that the case of Newman v. Commissioner, supra, so far as it was in conflict with Lang v. Commissioner, supra, was impliedly overruled and was no longer authority. The writer of the opinion in the Newman case dissented.

In the DeLappe case it was held:

"Under Louisiana law, a wife has a present vested interest in one-half of the community property and not a mere expectancy, and upon death of the husband she does not take by inheritance but in her own right as owner.

"Under Louisiana law, a husband is the head of the community and he may dispose of community property without the consent of the wife, but in doing so he acts as agent for the community and not by right of ownership of the whole."

In the opinion it is stated:

"* * * In computing estate taxes on the proceeds of life insurance the question to be decided is whether the decedent paid all or only part of the premiums. It is unimportant whether the beneficiary receives the proceeds as separate property or as community property. In either case, if the premiums have been paid out of community funds, the wife has paid one-half of the cost of the insurance and the decedent has paid the other half. In this case the interest of decedent in the policies at the time of his death was only one-half."

Following the decision in the DeLappe case, and citing it with approval, the Supreme Court of Texas decided Blackmon, etc., v. Hansen, 140 Tex. 536, 169 S.W. 2d 962, in which the factual situation was parallel to that in the instant case. Therein it was held:

"Where community funds were used to pay premiums · on deceased husband's life policies, taken out after his marriage, under which wife was sole beneficiary, only one-half of proceeds collected under policies, less $40,000 allowed as an exemption, were subject to inheritance taxes as part of husband's gross estate. Vernon's Ann. Civ. St. art. 7117."

The weight of authority in states having community property laws sustains the rule· announced in Blackmon v. Hansen and in Re Coffey's Estate, supra. The order and judgment of the Tax· Commission is vacated and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed.

WELCH, DAVISON, JOHNSON, O'-NEAL, and BINGAMAN, JJ., concur. HALLEY, V.C.J., and CORN, J., dissent.

HALLEY, V.C.J. (dissenting). I am unable to agree with the majority opinion, because I believe there has been a misconception of the law of insurance as it applies in states where the community property law is extant.

As was said in the majority opinion, the insurance policies here were taken out, and the insured died, while our short-lived community property law was in existence. Sec. 4 of our Community Property Act, which is found in S. L. 1945, p. 118, and sec. 55, Title 32, O.S. 1941, includes the following language:

"The husband shall have the management and control and may dispose of his separate property, both real and personal, and all community property, the management, control, and disposi-

tion of which is not conferred upon the wife hereby."

It must be remembered that the right to change the beneficiary, in this case, was retained by the insured, and that is the main reason I believe the majority opinion is wrong. In his article on community property laws as applies to life insurance in Vol. XVII, Texas Law Review (February, 1939), page 121, Mr. W. O. Huie, after discussing the rights of the wife in a policy made payable to her where there was no right to change the beneficiary, and which the courts held is her separate property from the beginning, had this to say in regard to policies where the right to change the beneficiary existed:

"The situation assumes a different aspect when the contract gives the husband the right to change the beneficiary. As long as the beneficiary can be divested of the right to receive the proceeds without her consent, her interest in the policy is slight; the substantial ownership of the chose represented by the policy is in the insured. If the husband, after taking out such a policy in favor of his wife, dies without exercising the right to change the beneficiary, the wife receives the proceeds as a gift from her husband, and therefore owns them by a separate title. But the gift is imperfect until the right of the wife becomes fixed by the death of the husband. During his life, the substantial ownership of the chose is in the husband. Like other property acquired by the husband during the marriage with community funds, his rights under the policy are community property. If the husband exercises his right to change the beneficiary and directs that the proceeds be paid to his estate, the gift to the wife never becomes complete and the proceeds, when paid by the insurance company, become community property. Likewise, if the husband changes the beneficiary to some third person, the gift to the wife is never completed. Whether the person designated as the beneficiary is entitled to the proceeds depends upon the extent of the husband's power to give away

community property to third persons without the consent of his wife * * *."

Every community property state which has had occasion to pass upon the question has held that where a policy on the life of the husband is made payable to the wife, the proceeds or death benefits under the policy are her separate estate, and the funds are not subject to community debts unless the creditors have been defrauded. In Nulsen v. Herndon, 176 La. 1097, 147 So. 359, 88 A.L.R. 236, this statement was made:

"The proceeds of life insurance policies. made payable to a named beneficiary form no part of the estate of the deceased, but. belong solely and exclusively to the beneficiary, 'directly and by the sole terms of the policy itself.' Furthermore, the proceeds of a policy of insurance on the life of the husband, and made payable to his wife, belong exclusively to her, and form no part of the community of acquets and gains which existed between them."

In Re Towey's Estate, 22 Wash. 2d 212, 155 P. 2d 273, the following statement was made:

"Where the insured designates his wife beneficiary of a policy of life insurance issued during the existence of the community, even if the premiums on the policy are paid with funds of the community, the proceeds of the policy become upon the death of the insured the separate estate of the wife."

This is the established rule in Texas. See Evans v. Opperman, 76 Tex. 293, 13 S.W. 312; Davis v. Magnolia Petroleum Co. (Tex. Civ. App.) 105 S.W. 2d 695. California has held the same in Re Dobbel's Estate, 104 Cal. 432, 38 P. 87; and in Re Lissner's Estate, 27 C. A. 2d 570, 81 P. 2d 448. Mr. Eugene A. Nabors, in Vol. VI, Tulane Law Review, 515, in discussing the problems of life insurance under the community property system, had this to say:

"* * * The uniform holding of the Louisiana decisions that the proceeds of a policy taken out by the husband

during marriage, maintained with community funds and made payable to the wife, form a part of the wife's separate estate, is correct."

Mr. Nabors cites, in support of this statement, Succession of Clark, 27 La. Ann. 269; Succession of Bofenschen, 29 La. Ann. 711; and Succession of Crouch, 8 La. App. 86.

Mr. Huie, in his article above mentioned, also makes this statement:

"It is also the well-established rule in all community property jurisdictions that when the wife is named the beneficiary in a policy taken out by the husband upon his own life and paid for with community funds, the proceeds received by the wife at her husband's death are her separate property. The funds are not subject to community debts unless creditors have been defrauded."

The tax which the Commission seeks to assess in this case is one levied upon the transfer of the net estate of every decedent, and is found in Laws 1939, p. 420, which Act provided that the tax should accrue at the time of the transfer by the death of the decedent and should be payable within fifteen months after the death of the decedent. The provision for determining the value of the gross estate found therein is as follows:

"* * * The value of the gross estate, used as a basis for the determination of the value of the net estate, shall be determined by including: * * *

"* * * To the extent of the excess over Twenty Thousand ($20,000.00) Dollars of the amount rceivable directly, in trust, or as annuities, by all beneficiaries, or under a joint policy by the survivor, of the proceeds of life insurance, by virtue of policies taken out by the decedent upon his own life, and in which, at the time of death, the decedent had the right, directly or indirectly, to change the beneficiary, or to convert the policy to his own use. * * *"

The majority opinion says the wife has a vested interest in half of the community property, and with this I find no fault. She had a half interest in the community property, and as long as her husband was alive the cash surrender value of the insurance policy was an asset of the community, in which she had a half interest; but after the death of her husband, the community had no claim whatsoever upon the proceeds of the policy. When we attempt to say that a half interest in the death benefits under an insurance policy is subject to only half the transfer tax, the majority opinion goes wrong. It relies upon the decisions from the State of Washington. Washington is the one community property state that has always taken the view that the wife had a half interest in a life insurance policy, even to the death benefits, by virtue of the fact that she owned a half interest in the community. This takes away from the husband powers that are granted to him under the community property law. The States of Texas and Louisiana have never assumed the position of the Washington Supreme Court; see Volunteer State Life Ins. Co. v. Hardin, 145 Tex. 245, 197 S.W. 2d 105, 168 A.L.R. 337; and Nulsen v. Herndon, supra. I call attention to the fact that In re Coffey's Estate, 195 Wash. 379, 81 P. 2d 283, was an inheritance tax case and not a transfer tax case, and did not pass on the question squarely as to whether the proceeds of the policies became the separate estate of the beneficiary on the death of the insured. If the Washington view were correct, half of the proceeds of this life insurance would be community property and would be subject to the debts of the community, and I have been unable to find a decision which has held that where the wife was made the beneficiary under the insurance policy, the creditors of the community had any claim whatsoever upon the proceeds of the insurance. All cases are to the contrary. Succession of Brownlee, 44 La. Ann. 917; Kelly v. Kelly, 131 La. 1024, 60 So. 671.

The majority opinion also misconstrues the case of Lang, Ex'r, v. Col-

lector of Internal Revenue, 304 U.S. 264, 82 L. Ed. 1331, 58 S. Ct. 880, 118 A.L.R. 318. In that case the court was simply applying the Federal tax as to that part of the estate which the State of Washington said was subject to an inheritance tax, and said that under the case of Poe, Collector, v. Seaborn, 282 U.S. 101, 75 L. Ed. 239, 51 S. Ct. 58, what the Federal authorities could assess as being taxable depended upon what the state courts said was taxable.

I am of the opinion that Newman v. Commissioner of Internal Revenue, 76 F. 2d 449, makes the proper construction of the Federal statute as it applies to life insurance policies of this kind. There the Federal authorities were assessing a policy from the State of Louisiana, where exactly the same situation existed as does here. The policies were made payable to the wife, with a right to change the beneficiary, and the court there held that the insurance policies were subject to the Federal tax. This case has never been overruled. In DeLappe v. Com'r of Internal Revenue, 113 Fed. 48, the Circuit Court for the Fifth Circuit said that the Newman case, so far as it is in conflict with the Lang case, "is impliedly overruled and no longer an authority." But the Lang case was construing the law of the State of Washington, as it is interpreted by the Supreme Court of the State of Washington, and there is no conflict in any way between the Newman case and the Lang case, because the State of Louisiana, in numerous decisions, as we have said, has held that when the policy is made payable to the wife and paid for out of community funds, the death benefits become the separate property of the wife. Judge Hutchinson dissented in the DeLappe case; he wrote the opinion in the Newman case, and in my opinion he has analyzed the situation correctly when he says that there is no conflict between the Newman case and the Lang case, and that there was nothing in the Lang case to show that the Supreme Court of the United States intended to overrule the Newman case,

as it was only deciding the Lang case upon the construction of the Supreme Court of the State of Washington.

In my humble judgment the Supreme Court of Texas, in Blackmon v. Hansen, 140 Tex. 536, 169 S.W. 2d 962, misconceived the question involved. The courts of Texas have always held that the proceeds of a life insurance policy made payable to the wife become her separate estate on the death of her husband. See Davis v. Magnolia Petroleum Co., supra. It went ahead and applied the tax to one-half of the death benefits, as the Supreme Court of the United States did in the Lang case, when the Supreme Court of the United States, as I have said before, was simply applying the Federal tax to the proceeds of life insurance policies in the State of Washington under the law as construed by the Supreme Court of the State of Washington.

Our statute, under which this tax is being collected, was passed before our community property law was passed. The right to levy a tax is not challenged. The question for determination is whether all, part, or none of the proceeds of these life insurance policies is subject to the tax. The state has the right to say what shall be considered a part of a man's estate insofar as life insurance policies are concerned. Allis's Will, 174 Wis. 527, 184 N.W. 831; Booth's Ex'r v. Commonwealth, 130 Ky. 88, 113 S.W. 61, 33 L.R.A. (N.S.) 592. The proceeds of these policies were not in existence and could not have been a part of the community property prior to the death of the insured; and since that is so, the proceeds of the policies became, upon the death of Seymour C. Davis, his wife's property. The fund which was transferred from the insurance company to the beneficiary, the wife of Seymour C. Davis, is subject to taxation. This tax is referred to in the Act as a transfer tax. It can apply to money that is transferred to an individual from the net estate of a decedent, as fixed by law.

It might be argued with some force that the premiums which were paid by the community for this life insurance might be deducted from the proceeds of the policies and thereby become an asset of the community, inasmuch as they were paid with community funds; but no case has ever held that any part of the proceeds should be taken away from the wife. If the majority opinion is right, then half the proceeds of these insurance policies should be subject to the debts of the community, if any there be; but to my way of thinking, the community had an interest in the policies until the time the insured died, and at that moment the proceeds of the policies passed to the beneficiary and became subject to the transfer tax. I do not think we intend to lay down a rule that the widow should get the benefit of exemption from the tax on half of the death benefits because half of it belonged to the community, and not let any part of the death benefits be liable for the debts of the community.

I respectfully dissent.