Clyde L. HISKETT, as Administrator of the
Estate of Minnie I. Wells, Deceased,
Plaintiff in Error,

v.

J. K. WELLS, Jr., and J. K. Wells, Jr., as
Executor of the Estate of J. K. Wells,
Deceased, Defendants in Error.

No. 38090.

Supreme Court of Oklahoma.

Dec. 22, 1959.

Rehearing Denied April 12, 1960.

C. L. Armstrong, Jr., Ponca City, William Hurwitz, Longview, Tex., Wayne W. Bayless, Sam S. Gill, Oklahoma City, for plaintiff in error.

Pearson & Moon, Oklahoma City, for defendants in error.

HALLEY, Justice.

This action for an accounting for community property was filed by the Administrator of the estate of Minnie I. Wells, deceased, against J. K. Wells, Jr., individually and as Executor of the estate of J. K. Wells, deceased, as defendant. The trial court entered judgment dismissing the action after having sustained defendant's objection to the introduction of evidence by plaintiff. Plaintiff has appealed, and we shall refer to the parties as plaintiff and defendant as they appeared in the trial court.

Plaintiff's second amended petition, in substance, alleged that he is the duly qualified administrator of the estate of Minnie I. Wells, who died in January, 1953; that she and J. K. Wells were married in 1922 and lived together as husband and wife until her death; that J. K. Wells died in 1954, and that defendant is his only heir and the executor of his estate; that from July 26, 1945, the date when our last community property law became effective, J. K. Wells and Mrs. Wells were residents of Oklahoma, and the income received by them during this period was community property, one-half of which belonged to Mrs. Wells; that by use of the community income they acquired other property, both real and personal, of which Mrs. Wells became the owner of an undivided one-half by reason of the community property statutes of Oklahoma; that J. K. Wells had the right to manage and control this property, and continued to manage and control it after the repeal of the Community Property Act in 1949, with the express consent of Mrs. Wells; that during all of this period Mr. Wells invested this income in property, the exact amount, character and kind of which is unknown to plaintiff, but of a value of more than $250,000, a part of which is represented in certain deposits and stock certificates specifically enumerated; that in 1952, Mrs. Wells became ill and unable to attend to her affairs "but relied upon her said husband to do so for her as he promised he would"; that Mrs. Wells "requested her said husband, J. K. Wells, to perform such acts * * * as might be necessary * * * to protect and preserve her said vested community property rights, and the said J. K. Wells * * * informed and assured her that he had and would do any and all things necessary * * * to accomplish such purpose"; that Mrs. Wells relied on these promises "because of the marital, fiduciary and confidential relationship between them"; that after the death of Mrs. Wells the plaintiff inquired of J. K. Wells and was "advised by him that he had and was taking care of same and had made proper arrangements and provisions and had executed necessary documents and papers securing and perfecting" Mrs. Wells' property rights; that all of J. K. Wells' papers passed into the hands of the defendant, who has been unwilling or unable to produce the aforesaid documents; that because of the foregoing the defendant is estopped to assert the statutes of limitations to this action; that defendant has come into the possession of all the

property belonging to Mrs. Wells, is concealing it from the plaintiff, is claiming ownership of it, has converted it to his own use, and has refused to account therefor to plaintiff. Plaintiff prays that a production of the books and records of J. K. Wells be directed and that an accounting by defendant to plaintiff be ordered.

The plaintiff's grounds for reversal are really included entirely in their first proposition, which is:

"The false statements made by J. K. Wells to Mrs. Wells and her sons, advising them that he had taken all steps and had executed the necessary and proper papers to properly preserve Mrs. Wells' community property rights, estopped J. K. Wells' estate from relying on the statute of limitations."

The defendant contends that the limitation contained in the Act repealing the Community Property Act is a "limitation on the right" to bring an action of this nature, and is a condition, or substantive rather than a remedial statute of limitation, which may be tolled by the facts alleged here. The legislation involved is Section 83, 32 O.S.1951, which is Section 2, Title 32 of the Session Laws of 1949. It repeals our Community Property Law of 1945. In the title of the Repealing Act, it is stated:

"An Act repealing Title 32, Chapter 1, Session Laws 1945, relating to community property; providing a method of preserving rights heretofore acquired under the Act and giving notice thereof to third persons; fixing the limitations for enforcing such rights; making provisions for severability; and declaring an emergency."

Section 83, 32 O.S.1951, first provides that after the effective date of the Repealing Act, being June 2, 1949, the husband and wife "may enter into a recordable agreement" specifying the respective rights acquired by them in community property while that Act was in effect, and authorized an action by either of them for the determination of their property rights if they were unable to agree. This section then provides:

"* * * The failure to make and record such an agreement, or to file such an action within one (1) year and record the judgment in due course thereafter, and in any event within three (3) years from the effective date of this Act, shall bar the husband or wife whose title or interest does not appear of record, or who is not separately in possession of the property, from any claim or interest in the property as against third (3rd) persons acquiring any interest therein. After three (3) years from the effective date of this Act, no action or proceeding of any character shall be brought to establish or recover an interest in property based upon the terms of the Act repealed, unless the interest has previously been established of record, as hereinabove provided."

The Community Property Act of 1945 Laws 1945, p. 118, provides in part as follows:

"3. All property acquired by either the husband or wife during marriage and after the effective date of this Act, except that which is the separate property of either as hereinabove defined, shall be deemed the community or common property of the husband and wife, and each shall be vested with an undivided one-half interest therein; * * *

"4. * * * The husband shall have the management and control and may dispose of his separate property, both real and personal, and all community property, the management, control, and disposition of which is not conferred upon the wife hereby."

Except such property as was classified as "separate property" by the 1945 Act, all property acquired by either spouse after the effective date of the Community Property Act of 1945, was "community property" in which each spouse owned an undivided one-half interest. 32 O.S.1945

Supp. § 68; Crane v. Howard, 206 Okl. 278, 243 P.2d 998; Davis' Estate v. Oklahoma Tax Commission, 206 Okl. 644, 246 P.2d 318. The Act of 1945, also provided that the spouse in whose name the property was taken had the right to manage, control and dispose of that property, and to that extent, the estate of the other was limited, but it was construed to be a vested estate in Davis' Estate v. Oklahoma Tax Commission, supra.

Our Community Property Law was very similar to that of Texas (Swanda v. Swanda, 207 Okl. 186, 248 P.2d 575) and the Supreme Court of Texas decided that the spouse who had the right of control over community property was not entirely free in using or disposing of the vested interest of his spouse in the community assets. In McMurray v. McMurray, 67 Tex. 665, 4 S.W. 357, 360, that court said:

"As to community property, a husband is, in a restricted sense, a trustee for his wife, bound to good faith, and derelict in duty if he conceals knowledge from her necessary to enable her to protect her rights. * * * 'The concealment of property by the husband * * * cannot prejudice the rights of the wife; for the law protects such as labor under incapacities, and such as are defrauded, and not those who commit fraud'."

Also in Kuehn v. Kuehn, Tex.Civ.App., 232 S.W. 918, 925, the court said that as to community property, there is a "fiduciary or trust relation which is presumed by law to exist between husband and wife." In Novy v. Novy, Tex.Civ.App., 231 S.W.2d 780, 782, it was held that "The right of a party to maintain an action to litigate rights as to community property when the fraud of the other party has prevented a litigation of such rights in a prior proceeding is well established."

We agree that the non-managing spouse had rights in the community property created by statute prior to the repeal of the Community Property Act, which could be enforced by appropriate proceedings, but the express right of a spouse to ask for a determination of the rights as acquired under the repealed Act was really created by the terms of the Repealing Act. Even if the rights of Mrs. Wells were fixed by the 1945 Community Property Act, her right to recover her share of the community property was specifically granted by the terms of the Repealing Act as above quoted, and fixed a term of three years within which the right must be exercised, if at all.

It is well recognized that statutes of limitation are of two types and referred to as substantive and remedial. Defendant asserts that the limitation referred to as substantive is a condition or a "limitation on the right." This type of statute is not subject to many of the pleas of avoidance or waiver by which an ordinary statute of limitation is defeated, such as by estoppel arising from fraud or deceit. Defendant insists that the three-year provision contained in Section 83, 32 O.S.1951, is a substantive type, and that plaintiff's plea of fraud does not estop the defendant from asserting the three-year provision against the claim of plaintiff.

It should be kept in mind that under the Repealing Act of 1949, J. K. Wells and Mrs. Wells had one year in which to enter into a recordable instrument fixing their rights in community property. It also provided that should the husband and wife be unable to reach such an agreement either may institute an action in the district court in the county of the residence of either of them for the determination of their rights. If such an agreement was not made and recorded or such action not entered within one year and judgment recorded in due course thereafter and in any event if these things were not done in three years from the effective date of the Act which was June 2, 1949, Mrs. Wells would be barred from any claim or interest in the property as against third persons acquiring any interest in such property. This Act further provided that no action or proceeding of any character shall be brought to establish or recover an interest in prop-

erty based upon the Community Property Act unless the interest has previously been established of record in the manner heretofore mentioned. These provisions show clearly that it was the intention of the Legislature that if no action or proceeding was started by June 2, 1952, claimants would be forever foreclosed from asserting their claims in court. The representative of Mrs. Wells commenced this action in the district court of Oklahoma County on February 24, 1956, being slightly over three years and eight months after the time fixed by the Repealing Act had expired.

The facts pleaded in plaintiff's second amended petition are ample to constitute fraud on the part of J. K. Wells prior to the death of Mrs. Wells on January 12, 1953. J. K. Wells died testate on February 4, 1954. His son, J. K. Wells, Jr. being his legatee, is the defendant in this action, as executor of his father's estate and sole heir. We can easily understand why the plaintiff and Mrs. Wells delayed any action while J. K. Wells lived and assured her that he had taken all steps necessary to protect her vested interest in the community property, and why her heirs delayed filing any action after the death of Mrs. Wells, but it is difficult to understand why the action was delayed for more than three and one-half years after the expiration of the three years fixed for such action after the Repealing Act became effective.

It is well established that there is a distinction between a "statute of limitation" and a "limitation on the right." In 53 C.J.S. Limitations of Actions § 1, b. (2) (c), it is said:

"A wide distinction exists between pure statutes of limitation and special statutory limitations qualifying a given right in which time is made an essence of the right created and the limitation is an inherent part of the statute or agreement out of which the right in question arises, so that there is no right of action whatever independent of the limitation; a lapse of the statutory period operates, therefore, to ex-

tinguish the right altogether. To such limitations the rules of law governing pure statutes of limitation, applicable to all classes of actions, have no application; they are to be determined by the law of the place under which the right of action arose or the contract was made and are not to be treated as waived merely because they are not specially pleaded. They are not subject to the disabilities and excuses through which the effect of ordinary statutes of limitation may be avoided, nor, it seems may they be evaded even by proof of fraud.

"Whether a particular limitation of time is to be regarded as part of the general statute of limitations, or as a qualification of a particular right must be determined from the language employed and from the connection in which it is used."

In 34 Am.Jur., Limitation of Actions, Section 7, it is stated:

"A statute of limitations should be differentiated from conditions which are annexed to a right of action created by statute. A statute which in itself creates a new liability, gives an action to enforce it unknown to the common law, and fixes the time within which that action may be commenced, is not a statute of limitations. It is a statute of creation, and the commencement of the action within the time it fixes is an indispensable condition of the liability and of the action which it permits. The time element is an inherent element of the right so created, and the limitation of the remedy is a limitation of the right. * * *"

■ We conclude that the three-year limitation provided in the Repealing Act was a condition imposed upon the exercise of the right of action granted and not a remedial statute of limitation, and that the trial court was right in sustaining a demurrer to and dismissing plaintiff's second amended petition.

The judgment of the trial court is affirmed.

DAVISON, C. J., and WELCH, JOHNSON and JACKSON, JJ., concur.

IRWIN, J., concurs in result.

WILLIAMS, V. C. J., and BLACKBIRD and BERRY, JJ., dissent.

WILLIAMS, Vice Chief Justice (dissenting).

The majority opinion, in paragraph 2 of the syllabus, states, "The above provision (32 O.S.1951 § 83) constitutes a substantive statute of limitations rather than a remedial statute and a condition which bars all proceedings or actions to recover community property."

The distinction between these limitations is well established, and may be stated as in 34 Am.Jur. Limitation of Actions § 7 (page 16):

"A statute of limitations should be differentiated from conditions which are annexed to a right of action created by statute. A statute which in itself creates a new liability, gives an action to enforce it unknown to the common law, and fixes the time within which that action may be commenced, is not a statute of limitations. It is a statute of creation, and the commencement of the action within the time it fixes is an indispensable condition of the liability and of the action which it permits. The time element is an inherent element of the right so created, and the limitation of the remedy is a limitation of the right. Such a provision will control, no matter in what form the action is brought. The statute is an offer of an action on condition that it be commenced within the specified time. If the offer is not accepted in the only way in which it can be accepted, by a commencement of the action within the specified time, the action and the right of action no longer exist, and the defendant is exempt from liability. Whether an enactment is of this nature, or whether it is a statute of limitations, should be determined from a proper construction of its terms. Generally, the limitation clause is found in the same statute, if not in the same section, as the one creating the new liability, but the fact that this is the case is material only as bearing on questions of construction; it is merely a ground for saying that the limitation goes to the right created, and accompanies the obligation everywhere. The same conclusion may be reached if the limitation is in a different statute, provided it is directed to the newly created liability so specifically as to warrant saying that it qualifies the right. On the other hand, as the result of differences in the statutory provisions under consideration, enactments requiring notice of claim prior to the commencement of suit variously have been held to impose conditions upon the existence of a right of action, to impose upon the jurisdiction of the court, or to constitute statutes of limitation merely affecting the remedy."

The majority opinion relies on only one conclusion for holding that the limitation in the present case is substantive, that is: "but the express right of a spouse to ask for a determination of the rights as acquired under the repealed Act was really created by the terms of the Repealing Act."

To me this reasoning seems erroneous. The real question to be decided in this facet of the present case is whether the "repealing act", either singly or in conjunction with the Community Property Act, created a new liability or cause of action not previously available to the parties under statutes or general principles of our law.

I believe that this present action could have been maintained even though the "repealing act" had omitted any reference to the filing of any actions.

The system or custom of "community property" was derived from French and Spanish jurisprudence through their colonies in America. The exact nature of the interest or estate of each spouse in the community property is unknown to our common law and has no counterpart therein. However, it is not necessary to consider the nature of the estates of each spouse in such property during the existence of the marriage.

We have held that under the Oklahoma Community Property Act, Okl.Sess.Laws 1945, p. 118 §§ 1 to 18, the wife had a present vested interest in one half of community property and not a mere expectancy. Page v. Sherman, Okl., 341 P.2d 270; Davis' Estate v. Oklahoma Tax Commission, 206 Okl. 644, 246 P.2d 318.

The "repealing act" does not deprive either spouse of his or her interest in the community property. To the contrary, it purports to protect the rights of the party whose interest does not appear of record.

What was the relationship of the joint owners, and the nature of their estates in this property? What was the effect of this dissolution of the "community entity?"

The Community Property Act provides that in event of the dissolution of the "community entity" by divorce (Section 10 of said act):

"* * * The husband and wife shall each be vested with an undivided one-half interest in the community property as *tenants in common*,";

and that upon death of one spouse (Section 15):

"When all debts of the community shall have been fully satisfied the survivor shall transfer and convey to the administrator or executor of the deceased one-half of the community property * * *, and thereafter all the interest of the surviving partner in said community property shall be that of a *tenant in common*; * * * (emphasis added).

No other means of dissolution was provided.

A general definition of tenancy in common is stated in 86 C.J.S. Tenancy in Common § 7 p. 364:

"In general, a tenancy in common springs up or exists whenever property is owned concurrently by two or more persons under a conveyance or under circumstances which do not either expressly or by necessary implication call for some other form of cotenancy."

I believe that the only logical legal conclusion is that upon dissolution of the "community entity" by the "repealing act", the husband and wife each owned an one-half interest in the community property as tenants in common. 42 C.J.S. Husband and Wife §§ 557–558, p. 63.

The rights acquired under the Community Property Act, as defined in such Act, were those pertaining to and including "an undivided one-half interest in the community property". The "repealing act" created no new tenancy in lands. Upon dissolution of the "community entity", the parties became tenants in common. All the remedies and rights of action known to common law and our statutes became available to them. The only determination that could be made would be whether a specific property was acquired as or subject to "community property" interest or as separate property of one of the parties.

It seems that the majority opinion is in error in saying that the limitation contained in the "repealing act" is a limitation of the right of action. The Community Property Act and the "repealing act" do not create a new liability or right of action coupled with a time limitation on the availability of the right of action, but merely recognize a right already existing. The "repealing act" as being interpreted, to my notion, then destroys such preexisting rights in an unconstitutional fashion and many a trusting spouse and their heirs are being "un-shirted" by this innovation.

Until today, in Oklahoma, property has been acquired by (1) Occupancy, (2) Accession, (3) Transfer, (4) Will or (5) Suc-

cession. 60 O.S.1951 § 331. Now there has been added (6) Legislative and Judicial Fiat.

I respectfully dissent.